THE STATE OF IOWA, Appellant, v. A. P. YORK, Appellee.

THE STATE OF IOWA, Appellant, v. WILLIAM LUDDINGTON, Appellee.

**Township officers:** ILLEGAL CONTRACTS: PUNISHMENT. The furnishing of men and teams by township trustees to perform labor for the township, under a contract with the road superintendent to pay for such service out of township funds, is prohibited by Section 468 (a), of the Code supplement; and a violation of such prohibited act is an indictable offense punishable under the general statute providing punishment for misdemeanors.

*Appeals from Dallas District Court.*— HON. EDMUND NICHOLS, Judge.

TUESDAY, OCTOBER 16, 1906.

IN each of the above-entitled cases the defendant was indicted on the charge that while holding the office of township trustee he unlawfully entered into a contract to furnish, and did furnish, to the road superintendent for the use of the township, men and teams to perform labor upon the public roads, and upon such unlawful contracts did collect and receive certain sums of money from the funds of

said township. The district court. having sustained demurrers to the several indictments, the State in each instance has appealed. The questions raised in the several cases being identical, they have been submitted together and will be disposed of in one opinion.— *Reversed* and *remanded.*

*Charles W. Mullan,* Attorney General, *Lawrence De Graff,* Assistant Attorney General, and *Miller & Russell,* for the State.

*White & Clarke,* for appellees.·

WEAVER, J.— The indictment is stated in the following manner and form (omitting the title) :

The said A. P. York, then and there being one of the duly elected, qualified, and acting trustees of the township of Colfax, in the county of Dallas, and State of Iowa, on the 25th day of August in the year of our Lord one thousand nine hundred and four, in the county aforesaid, did willfully and unlawfully enter into a contract with one J. W. Mills, one of the road superintendents of the township of Colfax aforesaid, to furnish a man and team and to perform certain labor for the township of Colfax aforesaid, in working on the public roads in the township of Colfax aforesaid, and became a party to said contract, and thereafter, under, and by virtue of said contract, and while still being such township trustee as aforesaid, he, the said A. P. York, did furnish a man and team and perform a certain amount of labor for said township of Colfax aforesaid, to the value of a certain sum of money, and he, the said A. P. York, while still ·holding the office of such township trustee as aforesaid, received from said township of Colfax aforesaid, ·by the hands of the said J. W. Mills, one of ·the said road superintendents, of the township of Colfax, aforesaid, under, and by virtue of, the contract aforesaid, the more particular description of which said contract and labor and the exact amount of which said money are to the grand jury unknown, contrary to the statutes in such case made and provided against the· peace and dignity of the State of Iowa.

The grounds of the demurrer as stated by counsel are as follows:

(1) The facts alleged in the indictment do not charge any crime known to the law. (2) There is no such crime known to the law as that charged in the indictment. (3) The facts stated in the indictment show that the defendant has not violated any prohibition of the law. (4) The law nowhere forbids the doing of any of the acts charged in the indictment. (5) The law nowhere attaches any penal consequences to the doing of any of the acts charged in the indictment. (6) The facts charged in the indictment fail to show that any contract was entered into with the township of Colfax. (7) The facts charged in the indictment show affirmatively that no contract was entered into by the defendant with the township of Colfax.

More briefly stated the questions raised by the demurrer and to be considered on this appeal are: (1) Is the act with which appellees are charged prohibited by the statute? (2) If such act is prohibited by statute, does the alleged violation thereof constitute an indictable public offense? If both of these inquiries are to be answered in the affirmative, then the trial court was in error, but if either must be answered in the negative the ruling was correct.

I. The Code Supp. section 468 (a) provides that, "members of boards of supervisors and township trustees shall not buy from, sell to, or in any manner become parties directly, or indirectly, to any contract to furnish supplies, material, or labor to the county or township in which they are respectively members of such board of supervisors or township trustees." This we think does, in plain unambiguous terms, prohibit the act with the doing of which defendants are charged. It is true, the indictment alleges that the labor was furnished under a contract with the road superintendent, but it is also alleged that the labor was so furnished for the township, and that defendant received pay therefor from the township. The road supervisor is the

officer through whom, under the direction of the trustees, the labor and money provided for the construction and repair of the roads are expended, and is the person by and through whom the labor for such purpose is employed. See Code, Title 8, chapter 2, and amendments thereto. The trustees are vested with authority to appoint the road superintendent and fix his compensation. Code, section 1523. They also fix the wages or compensation to be allowed for labor done on the road, and provide for the purchase of tools, supplies, and machinery for their township. Code, section 1528. And it is under their authority and direction that the taxes collected for road purposes are to be equitably and judiciously expended. Code, section 1533. It is obviously a matter of wise public policy that these trustees, who are thus expressly charged with the responsibility of appropriating and expending public funds, and of fixing the price which shall be paid for labor and supplies furnished their township, shall not be exposed to the temptation to use their official position to their own private advantage, and to that end the Legislature has undertaken to prohibit them from having any direct interest in such contracts. The wisdom of this is doubly apparent when we note that, in the cases at bar, the alleged contracts for the use of the township were made by the trustees with an officer appointed by them, subject to removal by them, and whose compensation is fixed by them.

II. Is the doing of an act thus prohibited an indictable public offense? It is this question which the counsel for the appellees present with the most confidence and urgency. It will be noted that the section of the Code containing the prohibitive language above quoted does not expressly declare that a violation thereof shall be a felony or a misdemeanor, nor does it in terms provide any penalty therefor. From this circumstance it is argued that the Legislature did not intend to brand the prohibited act as a public offense, and that its utmost effect is to make void and unenforceable any contract made in disregard of the statutory enactment. But

it is provided by Code, section 4905 that " when the perform-
ance of any act is prohibited by any statute and no penalty
for the violation of such statute is imposed, the doing of
such act is a misdemeanor." The next following section
(4906) declares that " every person who is convicted of a
misdemeanor, the punishment of which is not otherwise pre-
scribed by any statute of this state shall be punished by im-
prisonment in the county jail not more than one year, or by
fine not exceeding five hundred dollars, or by both such fine
and imprisonment." In other words Code Supp., section
468a prohibits the doing of the act charged in this indictment,
but provides no special penalty for its violation; Code, sec-
tion 4905, provides generally that the doing of an act pro-
hibited by statute is a misdemeanor; and section 4906 fixes
the punishment which may be assessed upon conviction of a
misdemeanor where no other punishment has been prescribed.
While it is probably true, as suggested .by counsel, that the
effect of the statute is to avoid contracts made in violation of
its prohibition, that fact is in no manner inconsistent with the
contention of the State that such violation is a public offense,
and, unless we are to uphold the further point made by the
appellees that Code, sections 4905 and 4906 are not appli-
cable hereto because the statute charged to have been violated
was enacted long after those sections had been made a part of
the law, the position taken by the State is impregnable. For/
certainly the statute prohibits the act, and just as certainly
the sections referred to make the doing of a prohibited act a
punishable misdemeanor.

Counsel seek to avoid this result upon the admitted princi-
ple that the power of one Legislature to enact laws is not
limited or circumscribed by the act of any prior Legislature.
The application which we are asked to make of this principle
is indicated in the following quotation from the appellee's
brief. " The court will bear in mind that we insist. there is
.no violation of the statute charged by the indictment, but, if
there were, we say that the sections referred to would not and

could not bring the statute under consideration within the scope of them and make a violation of it criminal. And this is for the reason that one Legislature in its enactments cannot bind future Legislatures or in any way abridge their powers. The sections referred to have been a part of our statutory law for more than fifty years. Certainly, however, the enactment of them could not prevent the Twenty-Seventh General Assembly, which enacted section 468a of the Code Supplement, from prohibiting the contracts therein referred to, without making them a crime. The Twenty-Seventh General Assembly was sufficient of itself upon that question, and concluded for itself the question as to whether or not the violation of that statute should be a crime. To say that that section of the Code Supplement is penal and creates a crime is to say that the Twenty-Seventh General Assembly was abridged or prohibited in its enactments by Legislatures sitting fifty years ago." At the first blush this proposition seems plausible, but upon closer examination it will be seen that, while the rule appealed to is unquestionably correct, it has no proper application to the facts. Code, sections 4905 and 4906 do not in any manner or in any degree limit the power of the Legislature at any time to legislate upon this or any other subject. Such is neither the purpose nor the effect of the provisions referred to. It was certainly within the scope of the power of the Twenty-Seventh or any other General Assembly " to prohibit the contracts referred to without making them a crime." But the fact is the General Assembly did not see fit to exercise that power. It found a general law in force making the doing of any prohibited act a misdemeanor, and in its wisdom it saw fit to add one more to the list of prohibited acts. It was competent for the General Assembly, had it desired so to do, to provide that the consequence of the violation of this law should be simply the invalidating of the prohibited contracts, or to have excepted violations of the prohibition from the effect of Code, section 4905, but it is sufficient to say that it did not do so. In add-

ing to the list of prohibited acts, if the Legislature was satis-
fied with the penalty prescribed by the existing general stat-
ute, there was no occasion for its repetition or re-enactment.
Nor does it require the reading into one statute of the provi-
sions of another.   Neither is anything taken by intendment.
One section or chapter of the Code may define a public of-
fense and another section or chapter may prescribe the pen-
alty therefor.   Why may not a subsequent Legislature en-
large such definition to include an act not before within its
scope, and by failing to prescribe any special penalty leave it
to be punished by the law already existing?   The statute
books present many instances of such legislation, and their
effectiveness have never been questioned.

Counsel also say that the very fact that the statute mak-
ing the prohibition contains no reference to a penalty is evi-
dence that none was intended, and insists that always, where
the prohibitive provision is intended to be penal, words will
be found to have been used of such import.   As an illustra-
tion of the fact that this is not always the case we may refer
to the case of *State v. Shea,* decided by this court in 106 Iowa,
735.   In that case the statute provided that no member of
the city council shall be directly or indirectly interested in
the profits of any contract for the city, and that such mem-
ber shall not vote upon any question in which he directly or
indirectly is interested — no reference being there made to
a penalty.   We there held the act of voting in violation of
such prohibition to be punishable under the general provision
as to misdemeanors.   The question there, as in this case,
arose upon demurrer, and we held the indictment sufficient.
The same rule was recognized and applied in *State v. Conlee,*
25 Iowa, 237.   It was also there held that no injurious re-
sults need follow the violation of the statute in order to make
it punishable.   We may also add that corrupt or wrong
motive is not an essential element of the offense.   The trustee
or other officer may have acted in the utmost good faith in
doing the forbidden act, and have taken no advantage of his

position to exact an unreasonable profit on his contract, but these things do not go to the question of his guilt. The act is forbidden without regard to the motive.

We know nothing of the circumstances attending the case before us save as they are alleged in the indictment and admitted by the demurrer. The defendants may have had no conscious purpose to violate the law, the violation may have been of a trivial character which could have been overlooked without injury to the public, and the prosecution may have been inspired by personal enmity and ill will, but none of these circumstances affect the question at issue. The act itself stands admitted for the purposes of this appeal, and we are clear that such act is forbidden by the statute and being forbidden it becomes punishable under Code, sections 4905 and 4906.

The suggestion of counsel that the legislative act was intended to operate upon the contract and not to impose any penalty on the officer making it is unsound. If that had been the legislative intent, it would have been easy to state it in intelligible and unmistakable form. The prohibition of the statute is in terms directed against the named officers and declares that they shall not buy from, sell to, or in any manner become parties directly or indirectly to any contract to furnish supplies, material or labor to their township. The language could hardly be broader in its scope or more clear in its meaning, and the officer who disregards its terms does something more than enter into a contract which the courts will not enforce against the township. He does an act which is expressly prohibited by the statute, and the doing of such an act is by statute made a misdemeanor.

It follows that, in our view, the trial court erred in sustaining the demurrer to the indictment, and the ruling in each of the cases named in the caption must be reversed, and the several cases remanded for further proceedings in harmony with this opinion.— *Reversed.*