STATE OF IOWA, Appellee, v. PETE ELLIS et al., Appellants.

GAMING: Gambling Device—Nickel-in-the-Slot Machine. A nickel-in-the-slot vending machine which, when operated, invariably produces a stated article of merchandise, and *sometimes*, in addition, divers numbers of metal checks which are each "good for five cents in trade," is a gambling device, even though a mechanism on the machine always indicates just what will be received on each operation of the machine.

Headnote 1: 27 C. J. p. 989.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

DECEMBER 15, 1925.

THIS is a proceeding pursuant to search warrant, and in condemnation of a certain machine as a gambling device. Judgment of condemnation was entered in the district court, and the defendant has appealed.—*Affirmed.*

*Howard L. Bump* and *Hyman E. Miller,* for appellants.

*Ben J. Gibson,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, *Vernon R. Seeburger,* County Attorney, and *Clarence I. Spencer,* Assistant County Attorney, for appellee.

EVANS, J.—The State sued out a search warrant pursuant to the provisions of Section 13200 of the Code of 1924. The searching officers seized, in the place of business of the defendant named herein, a certain vending machine which is alleged to be a gambling device. Such defendant, however, is not under prosecution in this case, the prosecution being confined solely to the condemnation of the machine. The fighting point in the case is whether the machine seized is a gambling device, within the meaning of the law. Gambling is defined in our statutes by Sections 13202 and 13203, Code of 1924.

The machine in question purported to be used for the sale of mints in packages. These packages were retailed at five cents each, through the use of the machine. It is a slot machine. The nickel goes into the slot, and the purchaser pulls a lever, whereby the mint package is delivered into the hand of the purchaser. This result is invariable. In addition to the package of mints, "chips" are sometimes delivered also. These "chips" are metal discs, which are stamped as being "good for five cents in trade." These "chips" furnish the allurement of the game. In order to avoid the appearance of chance in the game, an indicator is provided with this machine, which indicates to the purchaser in advance just what he will receive by a pull of the lever and a deposit of a nickel. At the first play of the lever, the purchaser is usually advised by the indicator that he will receive nothing but a package of mints. The first pull of the lever sets the indicator, however, for the next play. It may indicate that for the second pull of the lever the purchaser will receive a specified number of "chips" in addition to the mint package; or it may indicate that only a package of mints will be received. It is a question of chance at this point. If the indicator fails to promise "chips" for the second pull, such promise may be there when it is set for the third pull. The promise is sure to come if the lever is pulled and the nickel dropped a few times successively. The following from the cross-examination of one of the State's witnesses will furnish a sufficient description of the operation of the machine:

"Q. Now, Mr. Rosecrans, I give you five nickels, and I wish you would put one nickel in the slot up here at the hole above where it says '5 cents;' but before you put your nickel in, will you please look at the indicator in the window about the center of the machine toward the top, and tell the court what it says you are going to get, before you put your nickel in? A. Mint. Q. You understand what that means? A. Yes, sir. Q. What does it mean? A. It means that I will get a package of mints. Q. For your nickel? A. Yes, sir. Q. And that is all? A. Yes, sir. Q. Now put your nickel in, and let's see if you get it. (Witness plays machine.) Q. Now tell the court what is the result of your operation. A. One package of mints. Q. All right. Now what does the indicator say you will get the

next time? A. It says I will get four. Q. What does that mean? A. Chips. Q. A package of mints and four chips? A. Yes, sir. Q. Wait a minute. That is what you are going to get for this nickel that you are going to drop in? A. Yes, sir. Q. Now tell the court what you got for the nickel that you just put in. A. A package of mints and four chips."

At the submission of this case to us, the machine was produced and its operation illustrated.

The argument of the defendant is that, because the indicator always indicates to the player just what the next pull of the lever will produce, then the element of chance is entirely eliminated, and the player gets what he knew he would get before he put his nickel in the slot. The argument is very plausible, and illustrates the ingenuity of the invention. Its appeal to the gambling instinct is a very subtle one, and involves a continuing denial that the player is gambling at all. In order to support his argument, the defendant must address it and confine it to one deposit and to one pull of the lever. If a player were necessarily confined to one deposit and one pull of the lever, the argument could be accepted. But under such a rule, the game would lose its appeal. Nobody would care to play except when the indicator was set to promise "chips" in addition to the mints. The player is not so much seeking the package of mints that is promised him on the first play as he is the set of the indicator for the second play. If, after the first pull of the lever, the indicator still promises only a package of mints, the player may risk a third or fourth or fifth play. But whenever the prize is promised by the indicator, the player naturally claims it with another nickel and another pull. The set of the indicator as left for the next player usually promises no prize.

This is perhaps a sufficient description and indication of the lure that is hidden in the operation of this device. The player pulls the lever, not simply for the package of mints promised him by the indicator, but for his supposed option on the next pull, if the set of the indicator promises a prize.

As said by the Supreme Court of Indiana, in describing a similar machine in *Ferguson v. State of Indiana,* 178 Ind. 568:

"The inducement for each play was a chance that by that play the machine would be set to indicate that it would pay

checks on the following play. The thing that attracted the player was the chance that ultimately he would receive something for nothing. The machine appealed to the player's propensity to gamble, and that is the vice to which Section 2474, supra, is directed.''

Substantially the same thought was expressed by the Supreme Court of Missouri in *City of Moberly v. Deskin,* 169 Mo. App. 672 (155 S. W. 842):

''One cannot imagine that a player would stop when the indicator pointed at trade checks, i. e., at a certainty of gain. Consequently, the inventor of the device knew that, when each new player began, the indicator invariably would point to gum only,—i. e., to no reward for the next play,—but he also knew that, in the vast majority of instances, the dealings between the player and machine would consist of more than a single play; and we hold as unsound the view of defendant that each play constituted a separate and distinct transaction, in the sense of ending the relation of the player to the machine, which was designed and intended to include a number of plays. The contrivance was intended to allure the player into continuing to play, in the hope that the next time the finger would point to trade checks, and thus bring him something for nothing. Clearly, the machine was a gambling device.''

Machines of this character have been considered by the courts of last resort of many of our states. Without exception, they have been held to be gambling devices. The brief for the State cites decisions to that effect from the Supreme Courts of twenty-two states. It does not appear that any court of last resort has ever held otherwise. The defendant brings to our attention a contrary opinion by a *nisi prius* court in the state of Ohio. We deem the opinion clearly unsound.

We are of opinion that the machine in question, as operated, was a gambling device, within the meaning of our statute. We hold, therefore, that the trial court properly condemned the machine in question as a gambling device.

The judgment below is—*Affirmed.*

FAVILLE, C. J., and ALBERT and MORLING, JJ., concur.