STATE OF IOWA, Appellant, v. LOUIS J. (LOUIE) COWEN, Appellee.

No. 45679.

1118

April 7, 1942.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, Francis J. Kuble, County Attorney, and James P. Irish, Assistant County Attorney, for appellant.

Ralph N. Lynch and Harry B. Grund, for appellee.

Hale, J.—On October 10, 1941, the grand jury of Polk county returned an indictment against the defendant, Louis J. (Louie) Cowen, for illegal possession of gambling devices, which indictment recited that the defendant was accused of "Illegal Possession of Gambling Devices as defined in Section 13210 of the 1939 Code of Iowa, and charge that Louis Cowen had kept or held in his possession or under his control certain punch boards, slot machines and other machines used for gambling and devices with an element of chance attending such operation." Later the defendant demurred to said indictment. The demurrer is lengthy, covering over seven pages of the abstract. The demurrer, under ground 1, specifically assails the indictment and states as reason therefor, "that when Section 13210 of the Code of Iowa, 1939, was enacted by the Legislature as Section 1, Chapter 179, Acts of the 34th General Assembly of Iowa, the title of said act and Section 2 thereof provided a specific penalty for the violation of Section 1, that is, the seizure and destruction of the goods declared illegal and said penalty is in full force and effect, * * *," and therefore the provisions of section 12893 of the Code would not apply; that to attempt to apply the provisions of said section 12893 to violations under section 13210 would be in violation of the laws of Iowa, and particularly, such an interpretation would be unconstitutional and in violation of section 29, Article III of the Constitution of the state of Iowa, providing that every act shall embrace but one subject and matters particu-

larly connected therewith, which subject shall be expressed in the title. The second ground of the demurrer avers that:

"Said indictment does not substantially conform to the requirements of the Laws of the State of Iowa of 1939, which was never enrolled and passed as a whole by any General Assembly of said State, for all of the reasons expressed in paragraph one and specifically above set forth."

The demurrer then recites the history of section 13210 of the Code, setting out the various provisions and amendments thereto. In substance, the demurrer charges: First, that the indictment contained matter which, if true, would constitute a legal defense or bar to the prosecution; and second, that the indictment does not substantially conform to the requirements of the laws of the state of Iowa, or the compilation thereof known as the Code of 1939. No application for a bill of particulars, under section 13732.04, was made to the indictment, nor was there any objection made as to any constitutional infringement of defendant's rights, except as to section 29, Article III, of the state constitution, hereinafter referred to. On November 3, 1941, it was ordered by the court that the demurrer be sustained and the case as to the defendant dismissed. Defendant's bond was exonerated and he was released.

We may consider the Code sections referred to in the demurrer. The indictment was brought under the provisions of section 13210, which is found in chapter 593 of the Code, relating to gambling, and is as follows:

"13210 Possession of gambling devices prohibited. No one shall, in any manner or for any purpose whatever, except under proceeding to destroy the same, have, keep, or hold in possession or control any roulette wheel, klondyke table, poker table, punch board, faro, or keno layouts or any other machines used for gambling, or any slot machine or device with an element of chance attending such operation."

This statute appeared in the Laws of the Thirty-fourth General Assembly, chapter 179, and consisted of two sections, the first of which prohibited having, keeping, or holding in possession or control certain gambling devices; the second section provided

for their seizure, for hearing, and order for destruction. The title of the Act was: "AN ACT to prohibit the possession of roulette wheels, klondyke tables, poker tables, faro, and keno layouts, and to provide for the seizure and destruction thereof." It thereafter appeared in the Code Supplement of 1913, section 4965-a, and, without substantial change, was carried into the Code of 1924, becoming section 13210, prohibiting possession, and sections 13211 to 13215, inclusive, referring to search warrant and procedure thereunder. Thereafter section 13210 was variously amended and appears in the Code of 1939 as above set out. Most of the statutory requirements for seizure and confiscation now appear under the general search-warrant provisions of chapter 617 of the Code of 1939. There is a provision under section 13441.03, subdivision 6, providing that search warrant may issue, among other things, for property of the character specifically enumerated in section 13210. Sections 13211 to 13215, inclusive (section 2 of the original act), were repealed by section 45, subdivision 5, chapter 125, Acts of the Forty-sixth General Assembly, at the adoption of the new general search-warrant law.

Defendant argues that since the Code as it now stands contains substantially the provisions of the original act, the original penalty intended by the legislature when chapter 179 of the Laws of the Thirty-fourth General Assembly was enacted—that is, the seizure and destruction of the prohibited property—is still in existence and force and effect today, and this constitutes the only penalty, and therefore the court did not err in sustaining the first ground of the demurrer that the indictment contained matter which, if true, would constitute a legal defense or bar to the prosecution; that the legislature has never provided for any indictable offense in connection with the possession of the prohibited property, and therefore the general penalty for misdemeanors does not apply. The State insists that the penalty for the offense charged in the indictment is covered by sections 12893 and 12894. Section 12893 provides:

"When the performance of any act is prohibited by any statute, and no penalty for the violation of such statute is imposed, the doing of such act is a misdemeanor."

Section 12894 provides for punishment for misdemeanors, and is as follows:

"Every person who is convicted of a misdemeanor, the punishment of which is not otherwise prescribed by any statute of this state, shall be punished by imprisonment in the county jail not more than one year, or by fine not exceeding five hundred dollars, or by both such fine and imprisonment."

The point of difference, therefore, between the contentions of the defendant and of the State is as follows: Is the seizure and forfeiture of the prohibited articles a penalty for the violation of section 13210? If it is such penalty, then the prohibited act would not be punishable under the provisions of section 12894. But if, as claimed by the State, it is not a penalty for the possession and control of the prohibited articles, then such possession and control become a misdemeanor punishable under the general provisions of the law as found in section 12894.

We will take up the first claim of defendant, that the seizure and confiscation provided in section 2 of the original act constituted the specific penalty, and the only penalty, for the violation of section 1, and that this was not an offense where "no penalty for the violation of such statute is imposed"; therefore, such possession would not constitute a misdemeanor punishable under Code section 12894 by imprisonment or fine, but was punishable only by forfeiture of the outlawed device, and that the legislature, since section 12893 does not apply, has not provided any other punishment than forfeiture. Assuming, only for the purpose of consideration of this part of defendant's argument, that the original procedure for seizure of slot machines still stands as part of the act, and applies, our first inquiry should be: Does section 2 of the original act, providing for seizure and confiscation, constitute a punishment or penalty within the meaning of Code section 12893?

It is plain that to be a punishment there must be a deprivation of property, or of some right, such as the enjoyment of liberty; and the same may be said of a penalty. For instance, a revocation of a license following a conviction is not a "punishment."

"There is a plain distinction between such a withdrawal of

a special privilege which has been abused, the termination of a mere license, and the penalty which the law imposes as a punishment for crime." State v. Harris, 50 Minn. 128, 134, 52 N. W. 387, 388, citing State v. Larson, 40 Minn. 63, 41 N. W. 363.

Sometimes the words "forfeiture," "penalty," and "punishment" are used as synonymous. Some cases so hold, and other cases make a distinction. But it is not necessary here to make these distinctions or set out the various shades of meaning that have been given the words, or to criticize or analyze the definitions. They are not synonymous in all cases and under all circumstances.

Defendant cites Gosselink v. Campbell, 4 (Clarke) Iowa 296, 300:

"The terms, fine, forfeiture, and penalty, are often used loosely, and even confusedly. But when a discrimination is made, the word 'penalty' is found to be generic in its character, including both fine and forfeiture. A fine is a pecuniary penalty, and is commonly (perhaps always,) to be collected by suit in some form. A 'forfeiture' is a penalty by which one loses his rights and interest in his property."

Defendant cites also, as defining "fine" and "forfeiture," various cases noted in Words and Phrases.

Did section 2 of the original statute provide a penalty by way of forfeiture? To so hold we must find that there is a forfeiture. Thorsen v. Long, 212 Iowa 1073, 1077, 237 N. W. 515, 517, states:

"The word 'forfeit' has various shades of meaning depending on the context. Abstractly and generally it connotes the concept of 'loss'."

"What does the statute mean when it says that in such event 'the lien shall be forfeited?' In plain English the word 'forfeit' means to lose, and this is its legal meaning in this connection." Sheets v. Prosser, 16 N. D. 180, 183, 112 N. W. 72, 73. Applying the definition of forfeiture in the Gosselink case, supra, that: "A 'forfeiture' is a penalty by which one loses his rights and interest in his property," to forfeit is to lose, and this also is its legal meaning. 26 C. J. 891, section 4, citing Casey

v. St. Louis Transit Co., 116 Mo. App. 235, 91 S. W. 419, 423; Sheets v. Prosser, 16 N. D. 180, 112 N. W. 72, supra; Eakin v. Scott, 70 Tex. 442, 445, 7 S. W. 777. To constitute a forfeiture, in the words of Justice Morling in the Thorsen case, he must have "suffered a loss," and, under the definition in the Gosselink case, he must have lost "*his* rights and interest in *his* property." Forfeit is defined:. "To lose, or lose the right to, by some error, fault, offense, or crime." It is also held to mean: "To subject, as *property*, to forfeiture or confiscation." Webster's New International Dictionary. (Italics supplied.)

█ This leads to the inquiry: Were the machines seized in this case property? The word "property" is often loosely used, as in some statutes, as a substitute for articles, land, etc., but no one could contend that the word, so used, always determines legal character or indicates ownership in its legal sense. Property in a thing consists not merely in its ownership and possession, but also in the unrestricted right of use, enjoyment, and disposal. Iford v. Nickel, Tex. Civ. App., 1 S. W. 2d 751, 753. See, also, In re Crook, 219 F. 979; City of St. Louis v. Hill, 116 Mo. 527, 22 S. W. 861, 21 L. R. A. 226. It includes the right to possession, enjoyment, and disposition. City of Winchester v. Ring, 312 Ill. 544, 144 N. E. 333, 335, 36 A. L. R. 520; Tatum Bros. Real Estate & Investment Co. v. Watson, 92 Fla. 278, 109 So. 623. Webster's New International Dictionary defines property as: "The exclusive right to possess, enjoy, and dispose of, a thing; * * * in a broad sense, any valuable right or interest considered primarily as a source or element of wealth"; and it is further defined therein as: "That to which a person has a legal title; * * * an estate, whether in lands, goods, money, or intangible rights." See, also, Spring Valley Water Works v. Schottler, 62 Cal. 69, 72, 84. These cases are cited, with a great many more, in the permanent edition of 34 Words and Phrases 438–440.

The word has been defined by this court, as in First Nat. Bk. v. City Council, 136 Iowa 203, 209, 112 N. W. 829, 832: "* * * the term 'property' includes everything of value, tangible or intangible, capable of being the subject of individual right or ownership." See, also, Wapsie P. & L. Co. v. City of Tipton, 197 Iowa 996, 1000, 193 N. W. 643, 645, where it is defined as:

"The term 'property' is said to be *nomen generalissimum,* and to include everything * * * corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value, or which goes to make up one's wealth or estate."

Groenendyke v. Fowler, 204 Iowa 598, 600, 215 N. W. 718, 719:

"Controlling the required interpretation is the word 'property.' Dictionaries, as well as courts, have given this designation a well established and definite meaning, respectively, to wit: First, 'The exclusive right to possess, enjoy, and dispose of, a thing * * *. In a narrower sense, *property* implies exclusive ownership * * * of things, as where a man owns a piece of land or a horse; in the broader sense, *property* includes, in the modern legal systems, practically all valuable rights * * * included various incorporeal rights, as patents, copyrights, rights of action; * * * an estate, whether in lands, goods, money, or intangible rights, such as a copyright, patent rights, etc. * * * .' "

Kneebs v. City of Sioux City, 156 Iowa 607, 610, 137 N. W. 944, 945: "The term 'property' in its appropriate sense means that dominion or definite right of user and disposition * * * over particular things or subjects, * * *."

The Code of 1939, section 63, paragraph 9, defines "personal property," and paragraph 10 states that property shall include both real and personal. See, also, Mack v. Independent Sch. Dist., 200 Iowa 1190, 1192, 206 N. W. 145, 146. It will be found on examination that in practically all of the cases where a property right is held to be in such things as intoxicating liquor, the article or thing seized is capable of lawful use as well as unlawful. Some of the articles described in the indictment under section 13210 are unlawful under all circumstances except in process of seizure. We are satisfied that in no case can there be any such property right unless there is a legal right to possession and a right to transfer or to dispose of as one's own. Unless there is such legal right the law affords no protection, and it would naturally follow that there is no property right.

Slot machines are gambling devices—Rankin v. Mills Nov-

elty Co., 182 Ark. 561, 32 S. W. 2d 161; State v. Doe, 227 Iowa 1215, 290 N. W. 518; State v. Ellis, 200 Iowa 1228, 206 N. W. 105; State ex rel. Manchester v. Marvin, 211 Iowa 462, 233 N. W. 486; State v. Doe, 221 Iowa 1, 263 N. W. 529—and are made so by the statute; and the having, keeping, or holding in possession or control, of the machine, is outlawed. They are distinguished from mere vending machines. State v. Doe, 227 Iowa 1215, 290 N. W. 518, supra. Under the United States Revenue Act of 1941, 26 U. S. C. A., Int. Rev. Code, section 3267, they are taxed at $50 per year. Could there, then, be any property right in such gambling devices? And, therefore, can one who has been deprived of that which he cannot legally own or hold be said to have forfeited anything; or can one who loses possession of that which he had no right to possess be said to have suffered any loss or forfeited any property right? A person who has stolen property is not punished by taking away from him the goods which he has stolen. If one has in his possession goods which he has stolen, or which he knows have been stolen, the fact that he is compelled to surrender them is not a punishment or a penalty, even if compelled to "forfeit or surrender possession" of such stolen property. It is difficult to see the difference in principle between stolen property, which no one but the owner has any right to possess, and articles which no one has any right to possess. If the deprivation of the possession of stolen goods occasions no loss and is therefore no penalty, then equally so, to take from the holder that which the State declares is not legal property can be no punishment, and there is no forfeiture, since he sustains no loss.

Since this particular form of gambling machine is of comparatively recent use, few courts have had occasion to consider it. However, in the Idaho Supreme Court, in the case of J. B. Mullen & Co. v. Moseley, 13 Idaho 457, 468, 90 P. 986, 989, 12 L. R. A., N. S., 394, 121 Am. St. Rep. 277, 13 Ann. Cas. 450, the plaintiff sought to recover by replevin certain slot machines being incapable of use for any purpose except in violation of the anti-gambling law, and the court held no action would lie for their possession. The court, in discussing the right to take and destroy the property, said:

1126

"In this case the articles or property seized, if they might be called such, are instruments of crime only. The most effectual method of preventing the crime is to destroy the specific instruments designed and kept for its perpetration. This is peculiar to the crime of gambling as to few other crimes. * * * Under the constitution, no man's property may be taken without due process of law, but when he invokes the protection of this constitutional provision, he must show that he is invoking it for the protection of something that is really property and falls within the meaning of that term. He is entitled to his day in court when his property rights are invaded, but this guaranty can scarcely be invoked where he seeks his day in court that he may dispute with the officers of the law the right of possession of instrumentalities, tools and machines contrived and designed as a ready means to be directed against society, and in violation of the laws of the land in the commission of crime."

Quoting from 25 Am. & Eng. Encyc. of Law, 2d Ed., 146, the case states at page 469:

" 'Articles which are designed to be used in violation of the criminal law may be summarily seized by the police authorities under a statutory power to prevent crime; and the seizure of such articles is not taking of property without due process of law within the constitutional inhibition'."

Thus it will be seen that such articles, not having the attributes of property, are not subject to constitutional protection.

So in Spalding v. Preston, 21 Vt. 9, 15, 50 Am. Dec. 68, 73, the court refused to protect or return to the alleged owner certain counterfeit coins, and said:

"Courts of justice will not sustain actions in regard to contracts, or property, which have for their object the violation of law. * * * Such property is, so to speak, outlawed, and is common plunder. * * * So, too, if any member of the body politic, instead of putting his property to honest uses, convert it into an engine to injure the life, liberty, health, morals, peace, or property of others, he thereby forfeits all right to the protection of his bona fide interest in such property, before it was put to that use."

In Board of Police Commissioners v. Wagner, 93 Md. 182, 194, 48 A. 455, 457, 52 L. R. A. 775, 86 Am. St. Rep. 423, an action to recover a musical slot machine, the court holds to the same effect, citing the Vermont case, and says:

"So in the case at bar, no legal use can be made of the machine and it would seem to follow, in the absence of proof to the contrary, that the appellee intended to put it to the illegal uses for which it was constructed and for which alone it was capable of being used. And this would be so even if it were not admitted, as it is here, that its intended use was in violating the gambling laws of the State." Referring to cases cited by the appellee (defendant) in that case, the court further says at page 195: "Those are cases where the article seized may be put to legal as well as illegal uses, and until it has been shown before the proper tribunal that it was designed to be put, or has been put, to an illegal use, it cannot be seized as a preventive measure. But that is not the case at bar, because we here have it admitted, not only that the slot machine cannot be used for a legal purpose, but that the appellee intended to use it for illegal purposes. * * * [at page 191] It is fully sustained by the decisions in this Court that the State has power to pass such laws as are necessary to protect the health, morals or peace of society; and where the summary seizure, or even the destruction, of the offending thing is necessary for the public safety, may authorize that to be done, and such laws are not incompatible with those constitutional limitations which declare that no person shall be deprived of his property 'without due process of law.' "

Also, in Frost v. People, 193 Ill. 635, 640, 61 N. E. 1054, 1056, 86 Am. St. Rep. 352, a proceeding for the seizure and destruction of property used for gambling purposes, the destruction thereof is held to be not unconstitutional because depriving persons of property without due process of law, such apparatus not being the lawful subject of property which the law protects. The court says:

"They are, therefore, not lawful subjects of property which the law protects, but have ceased to be regarded or treated as property, and are liable to seizure, forfeiture and destruction without violating any constitutional provision."

In the foregoing cases, there can be no difference between that which is admittedly to be used unlawfully and that which is by statute unlawful of itself.

We are not to be understood as saying that merely because a game can be played for a wager the instrumentalities which might be so employed are subject to seizure and forfeiture, and the possessor is to be punished for their possession. Such a holding would be beyond the evident intent of the legislature and would render criminal the possession of playing cards, golf balls, bowling balls and pins, and countless articles innocent in themselves but capable of being used for gambling. Only when articles are actually shown to be wrongly used, or else are declared by statute to be gambling devices, can they be subject to the provisions of Code section 13210. State v. Doe, 221 Iowa 1, 263 N. W. 529, supra; State v. Leicht, 17 Iowa 28. Whether the legislature could make any device illegal by merely saying so is not the question and we are not so asserting. They have, as in this instance, brought under the ban machines commonly known to be used for the purpose of gambling and for no other purpose, and this they undoubtedly had the right to do. Nor is any objection made in this case to the power and right of the legislature to so legislate.

We are convinced that, even if the provisions of section 2 of the original act were still in force, authorizing seizure, in a specific manner, of the articles described in Code section 13210, which no one is entitled to possess, own, or use, there would not be such a penalty or forfeiture as would prevent such use or control from being a misdemeanor, punishable under the general provisions for punishment of all misdemeanors.

II. Even if subdivision 2 of the original act was at one time a penalty, does such original specific penalty longer exist? We hold that the provision for seizing the forbidden property was not a forfeiture or penalty and did not preclude the prosecution under the criminal statutes. But even if it were such, the statute as it now stands contains no provision for a penalty of any sort. Assuming that the original statute carried through into the Code of 1924 still had as a part of it the original provisions, yet, by chapter 125 of the Acts of the Forty-sixth General Assembly, Code sections 13211 to 13215, inclusive, relating to

seizure and confiscation, were all repealed. This repeal was embodied in said chapter 125, which was a new search-and-seizure law and applied to many and varied things. An examination and comparison of the original section 2 of chapter 179 of the Acts of the Thirty-fourth General Assembly with the new search-and-seizure law discloses that in many respects it differs. There is a great variation in the time and form of notice, the time of hearing, the manner of hearing, and in various other things. The new search-and-seizure law was general and applied to nearly all things prohibited by the Code (chapter 125, 46th General Assembly, chapter 617, Code, 1939). The articles described are of nine different classes (Code, 1939, section 13441.03), including stolen property, that which has been used as a means of committing a felony, property held by persons with intent to use it as a means of committing a public offense, property employed in carrying on a gambling house, personal property, matters prohibited by various sections, including 13210, cigarettes, intoxicating liquors, and, generally, any other property which is legally subject to search warrant by any law of the state. By the enactment of this chapter it is evident that the legislature intended a general procedure under search warrants, and did away with specific provisions as found in various parts of the Code. Cases cited by defendant to the effect that rearrangement of old statutes or variance in language is not necessarily indicative of changes in meaning are not applicable here, since the procedure authorized by the new law is, except for the authorization contained therein to seize the prohibited slot machines, so greatly different from the original provision. We do not think that this could be held a continuation of section 2 of the original gambling-device statute, and we hold that the section as it now stands contains no penalty, and therefore constitutes such possession, holding, or control, a misdemeanor.

To neither of the grounds urged by the defendant can we agree. First, we disagree with his contention that the seizure and confiscation of the property constituted a penalty so as to take it out of the general misdemeanor statute as it originally stood; and second, even assuming that this so-called forfeiture is a penalty, we hold that there is no specific penalty provided, nor any penalty other than the general law relating to all so-

1130

called contraband acts or things, providing for their confiscation and destruction or appropriation.

Defendant argues that this court has never applied the general misdemeanor provisions of Code section 12893 to a statute where a forfeiture or destruction of goods is already provided for. No authorities, however, are cited. The defendant cites generally certain Iowa cases which were prosecuted under the general misdemeanor provisions, which, of themselves, do not support his argument—among them, State v. Conlee, 25 Iowa 237. In State v. Shea, 106 Iowa 735, 72 N. W. 300, a general misdemeanor provision was considered applicable; but in that case there was a penalty—a deprivation of the right to continue in a particular office. And so in State v. Olinger (Iowa) 72 N. W. 441. Defendant cites also Woolf v. Nauman Co., 128 Iowa 261, 103 N. W. 785; Pierce v. Doolittle, 130 Iowa 333, 106 N. W. 751, 6 L. R. A., N. S., 143; State v. York, 131 Iowa 635, 109 N. W. 122; State v. York, 135 Iowa 529, 113 N. W. 324; Bopp v. Clark, 165 Iowa 697, 147 N. W. 172, 52 L. R. A., N. S., 493, Ann. Cas. 1916E, 417; Farmers Sav. Bk. v. Jameson, 175 Iowa 676, 157 N. W. 460, L. R. A. 1916E, 362. All of these cases cited have no application to the question in issue, and are cited by defendant merely to show that in these cases, where the general misdemeanor statute was held applicable, there was no forfeiture or seizure of goods.

It has been so many times held in this state that where no penalty is expressed, either in the title or in the act itself, it comes within the general law relating to misdemeanors, that no citation of authorities would seem necessary. But see, Bopp v. Clark, 165 Iowa 697, 147 N. W. 172, 52 L. R. A., N. S., 493, Ann. Cas. 1916E, 417, supra; State v. Shea, 106 Iowa 735, 72 N. W. 300, supra; State v. York, 131 Iowa 635, 109 N. W. 122, supra. The cases cited by defendant all show, and it has been the holding of this court many times, that when an act is prohibited and no penalty is imposed, such act is a misdemeanor.

III. Defendant argues that to so hold violates section 29, Article III, of the Constitution of Iowa, providing for but one subject and matters properly connected therewith, which subject shall be expressed in the title, for the reason that a penalty was provided in the original act for seizure and forfeiture

of the property, and no other penalty not expressed in the act may be enforced. We have discussed this phase of the argument in the preceding sections.

But we may refer to the cases cited by defendant. He refers to State v. Chenoweth, 226 Iowa 217, 284 N. W. 110. This case was decided, not on the constitutional question—although reference was made to the title—but upon the question of inclusion in the indictment of a person who was exempted, as a druggist, from prosecution under the act. The title therein did not prohibit the possession of the forbidden property, as in the case at bar. Nor do we think defendant's reference to Jones v. Mills County, 224 Iowa 1375, 279 N. W. 96, is applicable to the question of repeal as we have hereinbefore discussed it. The doctrine there referred to is that changes made by statutory revisions will not be construed as altering the law unless the intention to do so is clear. We hold, as indicated heretofore, that such changes have been made as to show the apparent intention to modify and change that part of the original statute referring to the seizure of prohibited articles.

It is the general rule, many times expressed by this court, that it is unnecessary to make the title to the act an index of its contents. But we call attention to Clear Lake Co-op. Live Stock Shippers Assn. v. Weir, 200 Iowa 1293, 1297, 206 N. W. 297, 299, and cases cited therein, wherein it is said:

"It is not necessary that the title shall contain a detailed recital of all of the provisions of the act, nor is it required to be an index or an epitome thereof. All of the provisions thereof must relate to the act as a whole, without incongruity or want of unity."

See, also, Chicago, R. I. & P. R. Co. v. Rosenbaum, 212 Iowa 227, 231 N. W. 646, and cases cited. All that the Constitution requires is that the subject embraced in the act shall be reasonably connected with the title and germaine to it, and that the title shall be calculated to give notice of the statute. State v. Fairmont Creamery Co., 153 Iowa 702, 133 N. W. 895, 42 L. R. A., N. S., 821; State v. Henderson, 215 Iowa 276, 243 N. W. 289; Leach v. Commercial Sav. Bk., 205 Iowa 1154, 213 N. W. 517; Fevold v. Board of Supervisors, 202 Iowa 1019, 210 N. W. 139;

Camaras v. City of Sioux City, 192 Iowa 372, 184 N. W. 821; Witmer v. Polk County, 222 Iowa 1075, 270 N. W. 323; State v. Talerico, 227 Iowa 1315, 290 N. W. 660.

These are only a part of the cases in which this court has held that if the enactment refers generally to the subject matter and is reasonably germane to and calculated to give notice of the subject matter, or of any change worked by it, the title is sufficient. It would, of course, be unnecessary and improper to express in the title what does not appear in the act itself; in other words, in this case the title states the subject of the act, and further reference to it in such title need not be made.

Holding, as we do, our conclusion must be that the sustaining of the demurrer by the district court was erroneous, and the cause is, therefore, reversed.—Reversed.

BLISS, C. J., and OLIVER, WENNERSTRUM, and GARFIELD, JJ., concur.

SAGER, J., concurs in result.

MILLER, J., concurs specially.

MITCHELL and STIGER, JJ., dissent.

MILLER, J. (specially concurring)—I think that the majority opinion reaches the correct result herein. However, I am unable to agree with the theory adopted in deciding this case.

The opinion states that the confiscation of the machines involved herein is not a penalty because the machines confiscated do not constitute property. I agree with such holding. However, in announcing the theory under which it is determined that the machines do not constitute property, the opinion states, "We are satisfied that in no case can there be any such property right unless there is a legal right to possession, and a right to transfer or to dispose of as one's own. Unless there is such legal right the law affords no protection, and it would naturally follow that there is no property right." I cannot agree with this statement. It seems to me to be too broad.

At the present time the government, in the exercise of its police power for the purpose of prosecuting the war in which we are now engaged, is making it unlawful to transfer or dis-

pose of many kinds of property. They can be transferred only pursuant to rules for priorities. Obviously, the owner does not have "the right to transfer or to dispose of as one's own" in such property. Nevertheless, it is still property and could not be appropriated by the government without paying just compensation therefor under the due-process clause of the state and federal constitutions.

The majority opinion states that no constitutional question is raised. That is true. However, the constitutional questions determine the proper approach and whether or not the proper theory has been applied. As I see it, the devices involved herein are considered not property for reasons other than the fact that the legislature has prohibited their possession or sale. The reason is that the legislature has determined that such devices are dangerous and pernicious to the public welfare. This is in accordance with the rules stated in 24 Am. Jur. 437, section 57, to wit:

"According to one view, where gambling implements and apparatus are determined by the legislature to be dangerous and pernicious to the public welfare, they are not property which is lawfully subject to the protection of the law, but cease to be regarded as property within the meaning of the due process clause and are liable to seizure, forfeiture, and destruction. * * * It is the use of such articles as slot machines and gaming tables as a means of accomplishing unlawful acts, and not the articles themselves, which the law condemns. Hence, if the court finds that at the time when they were seized under a search warrant, they were being used for an unlawful purpose, it may order their destruction; but if it finds that they were not being so held or used, it should order their restoration to the owner."

The indictment herein charged that the defendant held in his possession "certain punch boards, slot machines and other machines used for gambling." The demurrer to the indictment admits these facts. Because these machines are used for gambling, they are dangerous and pernicious to the public welfare and may be seized and destroyed without requiring compensation for their value. Accordingly, the owner thereof suffers no loss which the law will recognize. Having suffered no loss, no penalty

has been inflicted. I think that is the proper theory on which to decide the case.

In division II of the opinion, the court holds that even if the destruction of the machines is to be considered to be a penalty so that section 12893 was not applicable to the statute as originally enacted, this is not controlling now because the destruction of the machines is now accomplished by chapter 617 and not by reason of the original statute. The opinion holds that chapter 617 is a different kind of proceeding than that provided in the original statute. I think that this is immaterial. If we are going to assume that the destruction of the machines constitutes the destruction of property so as to be a forfeiture and a penalty, it seems to me to be immaterial whether the destruction is accomplished by chapter 617 or by the original statute. Section 12893 applies only in the event that there is no other penalty prescribed in the entire Code. If the destruction of the machines is a penalty, it is such no matter how it is accomplished. I think division II of the opinion should have been eliminated.