**In the Matter of the ESTATE OF Leonora G. HETTINGA, Deceased.**

**Peter G. GAASS, Claimant, Appellee,**

**v.**

**George G. HETTINGA, Executor of the Estate of Leonora G. Hettinga, Appellant.**

**No. 92–835.**

Court of Appeals of Iowa.

Jan. 25, 1994.

George Cosson, Des Moines, for appellant.

John R. Sandre and Michael E. Marshall of Smith, Schneider, Stiles, Wimer, Hudson, Serangeli, Robinson, Mallaney, Shindler, Scalise & Sandre, P.C., Des Moines, for appellee.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

SCHLEGEL, Judge.

The executor, and sole heir, of the decedent's estate appeals the district court's judgment, holding the claimant, the decedent's surviving brother, held a one-half interest in certain estate property. This case involves a claim by the decedent's brother that he holds a one-half interest in certain artifacts and antiquities in the decedent's custody at the time of her death. The executor of the decedent's estate is the son of the decedent.

The executor claims the district court erred in: (1) admitting the perpetuated deposition of Siebolt Hettinga, the executor's father; (2) concluding the property was jointly owned by the claimant and decedent; (3)

determining the claimant held a one-half interest in property in the executor's custody; (4) ordering the executor to return property in the executor's custody which was allegedly transferred to the executor during the decedent's lifetime; and (5) determining the ownership of certain artifacts without considering relevant evidence.

Leonora G. Hettinga died testate. Her son, and the executor of her estate, George Hettinga, is her sole heir. Peter G. Gaass is the decedent's brother. Leonora is a descendent of Dominie Scholte, one of the founders of the City of Pella. Dominie built a large home in Pella in the early 1800s. Dominie and his descendants filled the home with a large number of artifacts and antiquities. Through a somewhat complicated process, Leonora and Peter became owners of this home as tenants in common. Leonora resided in the home at the time of her death.

Peter filed this action against George as executor of the estate claiming a one-half interest in the artifacts and antiquities contained in the house. George claimed Leonora was the sole owner of the items contained in the house. The matter proceeded to trial.

At trial the court permitted the perpetuated deposition of George's father, Siebolt Hettinga. George objected to the admission of the deposition on the ground Siebolt was available to testify. George claimed Siebolt's live testimony was necessary to properly evaluate Siebolt's allegedly incredible testimony. The trial court concluded that Leonora and Peter each held a one-half interest in the property. George appeals. We affirm.

■ Our scope of review is governed by how the case was tried in district court. *Grinnell Mut. Reins. Co. v. Voeltz,* 431 N.W.2d 783, 785 (Iowa 1988). This case was tried in equity, so our review is de novo. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek,* 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

## I. *Ownership of the Scholte Artifacts.*

■ The appellant-executor's underlying position on appeal is that since Leonora Hettinga was permitted to begin living in the Scholte house in 1943, when Leonora and Peter's grandmother, Leonora Scholte, died, Leonora Hettinga (Peter's sister) had already "possessed" the Scholte artifacts for several years by 1951 when the house was deeded by Leonora and Peter's mother, Elizabeth S. Gaass, to Leonora and Peter as joint tenants with full rights of survivorship. The appellant-executor therefore contends that Leonora Hettinga was the sole owner of the Scholte artifacts at the time of her death. The appellant-executor cites *Thorp Credit, Inc. v. Wuchter,* 412 N.W.2d 641 (Iowa App. 1987), to support his argument that a rebuttable presumption exists that Leonora Hettinga owned the Scholte artifacts when she died.

The appellant-executor argues the decedent "possessed" the property between 1943 and 1951—the period of time the decedent lived in the portion of the Scholte house in which most of the contested Scholte artifacts were kept and have remained. Accordingly, he argues, Leonora is presumed to have been the owner of all the artifacts at the time of her death. Furthermore, the appellant-executor argues that since Peter failed to rebut this presumption during trial, Peter has no ownership right in the Scholte artifacts to assert against Leonora's estate.

Having carefully reviewed both the record and the parties' appellate arguments, we conclude the appellant-executor's argument must fail. Under the facts of this case, we cannot say that Leonora legally possessed the Scholte artifacts between 1943 and 1951 as this term is used in the case law. However, even if we accept the appellant-executor's argument that Leonora possessed the Scholte artifacts during this time period— and at the time of her death—we hold that any presumption of ownership which arose in her favor has been sufficiently rebutted by the evidence presented to the trial court by Peter.

Under *Wuchter,* "[a] rebuttable presumption of ownership arises from the possession of property. One has possession of personal

property when that property is held under that person's dominion and is subject to that person's control." *Thorp Credit, Inc. v. Wuchter,* 412 N.W.2d 641, 643 (Iowa App. 1987) (citations omitted). During the entire period of time from 1943 until 1951, the portion of the Scholte house in which Leonora was permitted to reside was owned by Elizabeth S. Gaass, Leonora and Peter's mother. Since the Scholte artifacts were kept in this same portion of the Scholte house, we conclude that the artifacts were still legally possessed by Elizabeth. Elizabeth ultimately held the property under her dominion; the property was still subject to her ultimate control.

We cannot say that the mere grant of permission by Elizabeth to Leonora to live in this portion of the Scholte house resulted in Elizabeth relinquishing ownership of the Scholte artifacts contained therein. As the *Wuchter* court pointed out:

> "Ownership" is a collection of rights to use and enjoy property, including the rights to sell and transmit it. (Citation omitted.) *Ownership therefore consists of the possession of things, coupled with an unrestricted right of use, enjoyment, and disposal of such property, State v. Cowen,* 231 Iowa 1117, 1123, 3 N.W.2d 176, 180, (1942), and is thus entitled to the property's products and profits.

*Id.* (emphasis added).

While it can be argued that Leonora "possessed" the Scholte artifacts in the sense that she exercised a limited degree of control over the artifacts by virtue of their presence in her living space, this contention is rebutted by the fact that Elizabeth continued to enjoy an unrestricted right of use to this same living space—and the artifacts located in it. As the *Wuchter* court properly noted: "Possession, however, is only one of the incidents of ownership of personalty, and one may have possession as an agent, or have possession merely as a custodian with consent of the owner." *Id.* (citation omitted).

> Where the owner retains constructive possession, the party to whom bare physical control of the property had been entrusted for the owner's purpose does not have possession but only custody.

*First Nat. Bank v. Lamoni Livestock Sales,* 417 N.W.2d 443, 448 (Iowa 1987) (quoting *Jacobson v. Aetna Casualty & Sur. Co.,* 233 Minn. 383, 386–88, 46 N.W.2d 868, 871 (1951)). *See also Goodrich Silvertown Stores v. Collins,* 167 Or. 40, 115 P.2d 332, 335 (1941) (temporary care or custody of property does not rise to the dignity of "possession" which implies custody coupled with a right or interest of proprietorship).

We also specifically reject the appellant-executor's insinuation that a distribution of sorts was made of grandmother Leonora's assets upon her death in 1943, in which the historical Scholte artifacts present in the Scholte house at that time were acquired by sister Leonora. We find nothing whatsoever in the record to support this claim. To the contrary, the record suggests that no such distribution took place at that time.

■ However, even if we were inclined to agree that Leonora "possessed" the Scholte artifacts, we still find appellant-executor's underlying argument on appeal to be unpersuasive. We find that Peter successfully rebutted at trial any presumption of ownership arising in Leonora's favor as a result of her alleged possession of the Scholte artifacts.

In 1971 Elizabeth died intestate. Leonora and Peter were the only heirs to their mother's estate. The evidence tends to show that both Peter and Leonora believed the Scholte artifacts had been given to them in equal shares in 1951 along with the conveyance of the west half of the Scholte house. The fact that the inventory in Elizabeth's estate lists no household furnishings or antiques supports the contention that Elizabeth, Leonora, and Peter viewed the artifacts as having been passed to Leonora and Peter during the conveyance of the Scholte house. Peter and Leonora's father had predeceased their mother.

However, it is clear the Scholte artifacts would have passed through Elizabeth's estate to Leonora and Peter in equal shares in any event. As the district court correctly pointed out, whether the Scholte artifacts passed at the time of the conveyance of the real property or whether the artifacts were inherited under the laws of intestate succession, the

result is the same: Leonora and Peter each held a one-half interest in the artifacts.

In 1966 Leonora and Peter changed the form of ownership regarding the west half of the Scholte house from a joint tenancy, with full rights of survivorship, to a tenancy in common. Leonora and Peter purchased the east half of the Scholte house from their Uncle Robert P. Scholte's side of the family; Uncle Robert had inherited the east half following the death of grandmother Leonora Scholte.

While Leonora continued to live in the west half of the house until her death, she and Peter rented out the east half of the house and the adjacent oil station lot. The rental money was placed in what was deemed the Scholte house account at the Pella National Bank. Leonora and Peter each owned one-half of that account. The checks written for payment of the insurance policy on the Scholte artifacts were from this joint account. Furthermore, the insurance policy on the Scholte artifacts identified both Leonora and Peter as the named insureds. These facts further evidence Peter's belief—and the belief of the deceased—that the Scholte artifacts were jointly owned by both of them.

In addition, Martha Lautenbach testified at trial that prior to the time that Leonora and Peter deeded both halves of the Scholte house to the Pella Historical Society in the fall of 1978, Ms. Lautenbach was called by Leonora to assist her in preparing an inventory of the personal property contained in the Scholte house. The record reveals that Leonora and Ms. Lautenbach prepared a list of the items in the Scholte house in the spring and summer of 1978. Ms. Lautenbach testified that the purpose of this inventory was to identify the items that Leonora jointly owned with Peter and the items that were owned solely by Leonora. Ms. Lautenbach testified that Leonora had always indicated to her that the Scholte artifacts were owned by Leonora and Peter together.

The evidence showed that Ms. Lautenbach, who was ninety-one years of age at the time of trial, had first met Leonora in 1936 and had become intimately acquainted with Leonora over the years. The district court, after rejecting the executor's challenge to the competency of this witness, specifically found Ms. Lautenbach to be "overwhelmingly the premiere historian with respect to the items of personal property under consideration in this case." The district court found Ms. Lautenbach's testimony to be "uncontroverted" in this regard, stating:

> That testimony of the witness, Ms. Lautenbach, is not only uncontroverted, but is corroborated by Exhibits 8 and 9 received in this record. Exhibit 8 is the original of a spiral notebook evidencing the notes Ms. Lautenbach took over a decade ago in conducting the inventory with the decedent. Exhibit 9 is the original of the typed inventory prepared by Ms. Lautenbach from her notes in Exhibit 8. The Court wants to emphasize that the witness produced the *original* of both documents....

We agree with the district court's finding that this testimony is uncontroverted. The inventory was compiled by Ms. Lautenbach making notes in a stenographic book while she and Leonora went through the house. Shortly thereafter, Ms. Lautenbach made a typewritten copy of her stenographic notes because she and Leonora agreed that both Leonora and Peter should have a copy of the inventory. The record further reveals that Leonora made all of the decisions regarding whether the particular items in the Scholte house were identified as jointly owned by her and Peter or solely owned by her.

At the same time that Ms. Lautenbach prepared her inventory, Leonora prepared an inventory in her own handwriting as she was going through the house with Ms. Lautenbach. Both the executor and the executor's wife testified at trial that these two lists of Scholte artifacts are virtually identical. After Ms. Lautenbach and Leonora completed the inventory, Ms. Lautenbach prepared a shorthand list of the inventory items that Leonora had identified as being owned solely by her. She testified she did this to ensure that none of Leonora's solely owned items were overlooked.

Following the inventory, title to the Scholte house passed to the Pella Historical Society, subject to life estates for Leonora, Peter, and Peter's spouse in the west half of

the Scholte house. The contents of the Scholte house were not included in the gift.

The record before us contains further evidence to support our conclusion that any presumption of ownership which arguably arose in favor of Leonora was rebutted. The claimant testified that it was always his and Leonora's understanding that the Scholte artifacts were owned equally between them. To support this contention, the claimant further testified that he paid a portion of the insurance on the personal property. This testimony is supported by Exhibit 5, claimant's canceled checks showing his payment on the insurance policy.

In addition, the record shows that prior to the time that the claimant withdrew as attorney for Leonora's estate, he and the executor entered into an agreement, consistent with claimant's understanding of the ownership of the Scholte artifacts, in which each would pay one-half the cost of an appraiser to appraise the personal property for inheritance tax and estate tax purposes. Exhibit 17 is a canceled check from the claimant to the appraiser evidencing his payment for one-half of those fees. The executor does not dispute such an agreement existed. The district court believed that the executor's failure to dispute the existence of this agreement "amounts to an admission as to Claimant's ownership interest in the personal property."

Finally, we note statements made by the decedent, Leonora Hettinga, herself during a tape recorded conversation relating to a voluntary conservatorship. The conversation was taped with the consent of Leonora, and a transcription of this conversation is contained in the record as Exhibit 12. As the district court noted in its finding of facts, "Exhibit 12 ... makes considerable reference to items being 'Scholte items' separate and apart from items that were hers [Leonora's] alone."

In accordance with our review of the evidence provided above, we hold that even if Leonora is deemed to have legally possessed the Scholte artifacts at the time of her death, as the appellant-executor contends, any resulting presumption of ownership of the artifacts arising in Leonora's favor has been rebutted by the claimant.

## II. *Admission of Deposition Testimony.*

■ Secondly, the executor of the estate argues the trial court erred in admitting the deposition testimony of Siebolt Hettinga, the decedent's former husband and the executor's father. Siebolt's deposition was taken for perpetuation purposes, upon counsel for the estate's request, on August 4, 1989, over two years prior to the trial of the present case. The executor points out the deposition was taken in the context of a previously scheduled hearing date. Claimant's counsel agreed to the request. The executor argues the trial court failed to follow the directives of Iowa Rule of Civil Procedure 144(c) in determining whether to admit the deposition testimony.

The introduction of depositions at trial in lieu of live testimony is governed by rule 144(c). This rule provides, in relevant part:

Any part of a deposition, so far as admissible under the rules of evidence, may be used upon the trial ... against any party who appeared when it was taken, or stipulated therefor, or had due notice thereof, either:

(a) To impeach or contradict deponent's testimony as a witness; or

\* \* \* \* \* \*

(c) For any purpose, if the court finds that the offeror was unable to procure deponent's presence at the trial by subpoena; or that deponent is out of the state and such absence was not procured by the offeror; or that deponent is dead, or unable to testify because of age, illness, infirmity, or imprisonment;

In the present case, the trial court failed to comply with the plain language of rule 144(c) by failing to make any findings with regard to the conditions precedent to the admission of the deposition. In *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632 (Iowa 1969), the court stated:

Unavailability of the deponent as well as admissibility of a deposition is to be determined by the court and depends generally upon the conditions which exist at the time it is offered. (Citations omitted.)

\* \* \* \* \* \*

We ... now hold that when the court is satisfied the conditions precedent provided in rule 144(c), R.C.P., have been established, it may receive a witness' deposition who, though previously present during the trial, is not when his deposition is later offered.

*Id.* at 652.

Here, the trial court did not make a finding as to whether it was satisfied that the conditions precedent provided in the rule had been established. Furthermore, unlike *Schmitt,* the trial court in the present case had no opportunity to previously observe Siebolt. Siebolt never appeared at trial. However, in the instant case, we cannot say the trial court's failure to comply with the rule amounts to reversible error. We find this to be true for two reasons.

■ First of all, our resolution of this appeal in no way relies upon the admission of Siebolt's deposition testimony. Secondly, Siebolt's testimony merely corroborated other evidence in the record, as well as the evidence discussed previously in this opinion, concerning joint ownership of the Scholte artifacts by Leonora and Peter. Consequently, Siebolt's testimony was cumulative. Evidence which is cumulative, which only corroborates other evidence properly in the record, does not constitute reversible error. *Farm–Fuel Products Corp. v. Grain Processing Corp.,* 429 N.W.2d 153, 161 (Iowa 1988); *Miller v. Bonar,* 337 N.W.2d 523, 528 (Iowa 1983). *See also* Iowa R.Evid. 103(a).

### III. *Trial Court's Jurisdiction to Order Executor to Return Estate Property.*

■ Next, the executor argues the trial court lacked subject matter jurisdiction to determine: (1) whether personal property (Scholte artifacts) allegedly given to the executor during decedent's lifetime was owned by the estate; and (2) whether the claimant had an ownership interest in the personal property constituting the alleged gifts. We find this argument to be without merit. In *Wederath v. Brant,* 287 N.W.2d 591 (Iowa 1980), the court stated, "When a court acts without legal authority to do so, it lacks jurisdiction of the subject matter." *Id.* at

595 (citations omitted). The trial court clearly had legal authority to consider the above issues.

Iowa Code section 633.112 (1987) provides:

**Discovery of property.**

The court may require any person suspected of having possession of any property, including records and documents, of the decedent, ward, or the estate, or of having had such property under the person's control, to appear and submit to an examination under oath touching such matters, and if on such examination it appears that the person has the wrongful possession or any such property, the court may order the delivery thereof to the fiduciary. Such a person shall be liable to the estate for all damages caused by the person's acts.

In the present case, the issue presented to the trial court was whether the Scholte artifacts were jointly owned by Leonora and Peter or solely owned by Leonora. Evidence was introduced at trial regarding the history of these artifacts, their past and current locations, and the actions of the parties and the decedent with respect to the artifacts. As a result, we hold the trial court acted well within its statutorily granted authority when it considered the issues about which the appellant-executor complains. The trial court did not lack subject matter jurisdiction to consider these issues.

### IV. *Conclusion.*

In accordance with the preceding discussion, we affirm the district court's "Findings of Fact, Conclusions of Law, and Judgment." In doing so, we have considered the appellant-executor's remaining contentions on appeal and find them to be without merit.

**AFFIRMED.**