# IN THE SUPREME COURT OF IOWA

No. 139 / 06-0351

Filed January 18, 2008

KIM WYATT,

    Appellee,

vs.

IOWA DEPARTMENT OF HUMAN SERVICES
and/or IOWA DEPARTMENT OF INSPECTIONS
AND APPEALS,

    Appellants.

---

Appeal from the Iowa District Court for Johnson County, Douglas S. Russell, Judge.

Nurse sought judicial review of finding of dependent adult abuse and inclusion of name on the dependent adult abuse registry. **DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Thomas J. Miller, Attorney General, and John R. Lundquist, Assistant Attorney General, for appellants.

Vernon P. Squires and Nikki J. Johnson of Bradley & Riley, PC, Cedar Rapids, for appellee.

**APPEL**, **Justice**.

In this case, the central issue is whether a nurse who seeks to muffle the screams of a distressed patient in order to protect the health of another seriously ill patient commits an assault under Iowa's dependant abuse statute and as a result, has earned a place on Iowa's dependent adult abuse registry. This case has caromed through the legal system, suffering a seemingly unending series of reversals and appeals.

We now settle the matter. No assault occurred under the facts of this case. Therefore, the decision of the court of appeals is vacated and the decision of the district court, including expunging Wyatt's name from the dependent adult abuse registry, is affirmed.

## I. Factual and Procedural History.

Kim Wyatt is a registered nurse employed by the University of Iowa Hospitals and Clinics. On May 12, 2004, Wyatt was assigned to the neuroscience unit, a stressful unit for medical staff under even the best of circumstances. On that day, Wyatt attended to a patient who suffered from a subarachnoid hemorrhage, a neurological condition that rendered the patient highly susceptible to stimuli such as light and noise. Patients with this condition who are exposed to excess stimuli can suffer ruptured aneurysms so severe as to cause paralysis or death. As a result, such patients are typically kept in darkness in private rooms without television, radios, telephones, or other sources of stimulation. Wyatt believed her patient's condition was particularly acute in light of the level of pain medication that had been prescribed by physicians. The level was twice as high as normally prescribed.

In a room adjacent to Wyatt's patient, E.W. was hospitalized. E.W. was an eighty-two-year-old man admitted for evaluation as a possible

candidate for brain surgery to remove a tumor from his frontal lobe. E.W. also suffered from a heart condition, hypertension, and was prone to bouts of dementia. This combination of ailments made E.W. a difficult patient who resisted all invasive medical procedures. As a result, he was often placed in restraints for his own protection and the safety of hospital staff.

While Wyatt was attending her patient, two nurses and a nursing assistant attempted to administer an IV to E.W. E.W. resisted, and began screaming, "Help me, help me." Wyatt and another nurse, responding to the commotion, ran into the room. By the time she entered, Wyatt found four staff members attempting to restrain E.W.

Faced with the chaotic situation, Wyatt became concerned that the commotion could harm her subarachnoid patient in the next room. Seeking to abate the threat and protect her patient by muffling the shouts, Wyatt grabbed a pillow and placed it over E.W.'s mouth, below his nose.

One of the nurses present in E.W.'s room objected to the use of the pillow and asked Wyatt to discontinue her efforts. Upon a second request, Wyatt removed the pillow. No one ran a stopwatch in the room, but those present estimated that the incident lasted between ten and thirty seconds. There were no signs that the pillow caused E.W. physical or respiratory distress. The patient had no memory of the incident, and thus voiced no complaint as to this course of treatment.

Another treating nurse, however, filed a report with Melissa Gross, the nurse manager of the unit, the following morning. After investigating the matter, Gross concluded that dependent adult abuse had not occurred. Gross's conclusion rested on her belief that Wyatt did not intend to abuse E.W. and that no harm resulted from her actions. Based

on her investigation, Gross found that Wyatt's sole intent was to protect her subarachnoid patient, not to harm E.W. The associate director of clinical practice, Ellen Cram, agreed with Gross's assessment. Although Wyatt received a favorable performance review by her supervisors after the incident, the hospital elected to file a report with the Iowa Department of Inspections and Appeals (DIA) as a possible instance of dependent adult abuse.

DIA investigated the matter and determined that Wyatt had committed dependent adult abuse by unreasonably punishing and assaulting E.W. DIA thus released Wyatt's name to the Department of Human Services (DHS) for placement on the dependent adult abuse registry. Wyatt appealed her inclusion on the registry.

After an evidentiary hearing, an administrative law judge (ALJ) issued a comprehensive proposed decision. In the proposed decision, the ALJ made findings of fact and conclusions of law. In the findings of fact, the ALJ found that Wyatt was not trying to hurt, punish, harm, cause fear, or offensively contact E.W. when she placed the pillow over his mouth. He concluded that Wyatt's only concern was for the safety of her patient.

In the conclusions of law, the ALJ noted that under Iowa Code section 235B.2(5)(*a*)(1)(a) (2003), dependent adult abuse includes "assault of a dependent adult." The ALJ further noted that under the applicable administrative rule, assault under this Code provision is the same as criminal assault defined in Iowa Code section 708.1. Iowa Admin. Code r. 441—176.1. He went on to note that while language in *Bacon v. Bacon,* 567 N.W.2d 414 (Iowa 1997), suggested that assault might be a general intent crime, this court overruled such an approach and declared assault a specific intent crime in *State v. Heard,* 636

N.W.2d 227, 231 (Iowa 2001). In light of *Heard*, the ALJ determined that negligent assault is not recognized by Iowa law. Based on the evidence in the record, the ALJ concluded that Wyatt did not commit dependent adult abuse and ordered that the report be expunged.

The March 10, 2005 decision of the ALJ was not mailed to the attorney for DIA. The decision itself notes that it was copied to the attorney through local delivery. The attorney for DIA, however, stated that she did not receive a copy of the proposed decision by mail or by hand delivery and was unaware of the decision until March 29, 2005, when counsel received a phone inquiry from the appeals division asking whether an appeal had been filed. Subsequently, counsel for DIA filed an appeal of the ALJ's decision to DIA's director on the following day.

The administrative rules of the department require that appeals be filed within fifteen days of the issuance of a proposed decision. Wyatt thus sought dismissal of the appeal as untimely, noting that a copy of the proposed decision was provided to the Health Facilities Division within DIA and to the DIA file. The director nevertheless refused to dismiss the appeal, noting that the DIA file is not the respondent's attorney's file for purpose of legal representation and notice, and noted that the department has not rigidly applied filing deadlines when technical irregularities are present. Good cause thus existed, according to the director, to excuse the filing, even assuming that it was untimely.

Approximately one month later, the director reversed the ALJ decision. In so doing, the director accepted most of the factual findings of the ALJ. He concluded, however, that "assault" was a general intent crime and all that was required was intended physical contact that a reasonable person would consider insulting or offensive. The director, moreover, rejected assertions of justification, concluding, without

elaboration, that there were "several options" that could have been considered and implemented to mitigate the stimuli. Finally, he noted that the use of the pillow was not part of any care plan and that if the course of action chosen was an approved method of patient care it would have been so reflected in the record.

Wyatt sought judicial review of the director's decision in the district court. The district court held that Iowa law did not recognize "negligent assault" and found that the record did not show that Wyatt acted with the specific intent to assault E.W. under applicable law. As a result, the district court reversed the director's decision.

DIA appealed the decision of the district court, and we referred the case to the court of appeals. The court of appeals reversed the district court, finding that Wyatt committed an intentional assault. We granted further review.

## II. Standard of Review.

Determination of the statutory requirements for dependent adult abuse has not been explicitly vested in the agency's discretion. *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 509 (Iowa 2003). As a result, our review is for corrections of errors of law. Iowa Code § 17A.19(10)(*c*).

## III. Discussion.

**A. Timeliness of Appeal.** The first issue is whether DIA's appeal of the proposed decision was timely. A proposed decision becomes final unless an appeal is made within the time provided by agency rule. Iowa Code § 17A.15(3). Iowa Administrative Code rule 481—10.25(1) provides that a request for review of a proposed decision shall be made within fifteen days of the issuance of the proposed decision. Issuance,

moreover, is defined as "the date of mailing of a decision or order or date of delivery if service is by other means." Iowa Admin. Code r. 481—10.1.

In this case, the proposed decision dated March 10 indicates that it was sent to the Health Facilities Division of DIA. DIA's counsel in the matter, however, did not receive a copy of the proposed decision dated March 10 until March 30 by "local" mail. DIA filed an appeal on the same day. Wyatt claims that under the circumstances, DIA's appeal is untimely. The district court did not address this issue in light of its ruling on the merits. The court of appeals, however, held that under the applicable administrative rule, the appeal was timely.

We agree with the court of appeals on the timeliness issue. For notice to be issued, it must be sent by mail to or received by, if other service is used, DIA's *representative* in the administrative proceeding, which in this case was DIA's counsel. Since the decision was not "issued" to DIA's counsel until March 30, the appeal was timely.

Even assuming the appeal was untimely, the agency retains discretion to waive the time requirements for appeal. Iowa Admin. Code r. 481—10.2. In excusing the delay, the director determined that good cause existed due to the mail confusion. On appeal, Wyatt does not challenge the factual finding of good cause. As a result, DIA's appeal was timely.

**B. Substantive Merits.** Iowa Code chapter 235B provides a statutory framework regarding dependent adult abuse. Iowa Code section 235B.2 establishes four categories of dependent adult abuse. One category of dependent adult abuse includes "assault of a dependent adult," which is at issue in this case. Other categories of dependent adult abuse include acts of sexual abuse, exploitation of dependent adults for personal or pecuniary profit without the consent of the

dependent adult, and deprivation of food, shelter, clothing, or other care necessary to maintain the dependent adult's life or health. *See generally* Iowa Code §§ 235B.2(5)(*a*)–(*d*).

Iowa Code section 235B.2 does not provide a definition of assault of a dependent adult. The administrative rules of DHS, however, provide that assault in the context of dependant adult abuse means assault as defined by the criminal code in Iowa Code section 708.1. Iowa Admin. Code r. 441—176.1.

The central question on this appeal, therefore, is whether assault under Iowa Code section 708.1 requires that the actor have a specific intent to offend or insult the victim, as contended by Wyatt, or a lesser showing that the intended physical conduct could be objectively viewed as insulting or offensive, as found by the director.

The question of what intent is required under Iowa Code section 708.1 to commit an assault has considerable recent history. In *Heard,* this court overruled prior precedent and held that assault was a specific intent crime. *Heard,* 636 N.W.2d at 231–32. The legislature in 2002 responded to our decision in *Heard* by adding a preface to Iowa Code section 708.1, declaring that "an assault as defined in this section is a general intent crime." 2002 Iowa Acts ch. 1094, § 1.

This court considered the impact of the 2002 amendment in *State v. Bedard*, 668 N.W.2d 598 (Iowa 2003). In *Bedard*, the court noted that the 2002 amendment did not alter the substantive content of Iowa Code section 708.1 as it pertained to the substantive elements of the crime. As a result, *Bedard* held that notwithstanding the new language, specific intent, as outlined in *Heard*, remained a required element of assault. 668 N.W.2d at 601.

The question of the elements of assault was revisited in *State v. Keeton*, 710 N.W.2d 531 (Iowa 2006). In *Keeton*, the court noted that the two labels—specific and general intent—were difficult to apply. 710 N.W.2d at 533–34. Instead, the court emphasized the need to focus on the elements of the crime involved. In order to prove assault, we held that the State must demonstrate not only that the defendant intended to make physical contact, but that the defendant intended that physical contact to be insulting or offensive. *Id.*

The State counters that assault for the purpose of Iowa Code section 235B.2(5) does not require intent. The State argues that the introduction to the provision plainly states that dependent adult abuse may be committed by the "willful or negligent acts or omissions of a caretaker." Iowa Code § 235B.2(5)(*a*)(1).

We disagree. This prefatory language does not recognize "negligent assault." Instead, we interpret the preface as providing general introductory language that is broad enough to cover the intent requirement of all categories of dependent abuse. Some of the categories, such as abuse arising out of sexual acts or assault, require willful or intentional acts, while other types of abuse, such as deprivation of food, shelter, and clothing, may arise from negligent acts or omissions. We further note that the theory of "negligent assault" is inconsistent with DHS's own rule, which incorporates the definition of assault in Iowa Code section 708.1. We, therefore, hold that the elements of assault as described in *Bedard* and *Keeton* are applicable to this case.

Applying the standard of *Bedard* and *Keeton,* we conclude that Wyatt did not have the intent necessary to assault E.W. The ALJ specifically found that Wyatt did not intend to harm or to offensively contact E.W., but only intended to muffle the noise for the protection of

her nearby patient. These findings of fact were adopted by the director, are not challenged on appeal, and are thus binding against the State. As a result, we find that Wyatt did not assault E.W.

### IV. Conclusion.

For the above reasons, the decision of the court of appeals is vacated and the judgment of the district court, including its order that Wyatt's name be expunged from the dependant adult abuse registry and that DHS provide notice of expungement pursuant to Iowa Code section 235B.10, is affirmed.

**DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**