# IN THE SUPREME COURT OF IOWA

No. 17–1300

Filed October 12, 2018

**BANILLA GAMES, INC.,**

Appellant,

vs.

**IOWA DEPARTMENT OF INSPECTIONS AND APPEALS,**

Appellee.

---

Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson, Judge.

A manufacturer and seller of electronic game devices appeals a judicial review decision of the district court upholding an adverse decision of the Iowa Department of Inspections and Appeals. **AFFIRMED.**

Thomas M. Locher and Amy M. Locher of Locher Pavelka Dostal Braddy & Hammes, LLC, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and David M. Ranscht and John R. Lundquist, Assistant Attorneys General, for appellee.

**WIGGINS, Justice.**

A manufacturer and seller of electronic game devices filed a petition with the Iowa Department of Inspections and Appeals (the Department) seeking a declaration that its devices "Superior Skill 1" and "Superior Skill 2" are not subject to the registration provisions contained in Iowa Code section 99B.53 (2016). The Department denied the petition concluding the outcomes of the games are not primarily determined by the skill or knowledge of the operator, and therefore, the games are subject to registration. The manufacturer and seller filed a petition with the district court seeking judicial review. The district court affirmed the Department's decision. The manufacturer and seller appealed. In this appeal, we find the Department properly interpreted the relevant statutes. We also find the Department did not prejudice the substantial rights of the manufacturer and seller based upon an irrational, illogical, or wholly unjustifiable application of law to fact. Finally, we find the Department did not prejudice the substantial rights of the manufacturer and seller unreasonably, arbitrarily, capriciously, or through an abuse of discretion. Therefore, we affirm the judgment of the district court.

## I. Background Facts.

Banilla Games, Inc. is a four-year-old North Carolina corporation. It manufactures and sells electronic gaming devices. Banilla seeks to distribute two of its games, Superior Skill 1 and Superior Skill 2, in the State of Iowa.

Superior Skill 1 and Superior Skill 2 are machines that each offer different games and themes for players to select using a touch screen. Both games require players to insert money into the machine through a bill acceptor on the front of the device in order to play. Each game offers five different game themes and multiple play levels. There are two main

categories of games on each device. One is a nudge game and the other is a hot swap game.

Nudge-style games consist of three electronic reels featuring different icons that spin when a player pushes the play button and stop automatically after a short time. The reels may also stop spinning if a player pushes the stop button. However, if a player pushes the stop button, the same icons will appear as if the player let the machine stop automatically. Players then determine whether a potential winning combination of two or more icons is present and choose one of the wheels to move up or down (i.e., nudge) in order to complete the winning pattern.

Hot swap-style games are similar in that after three spinning wheels stop, a player determines whether a potential winning combination of icons is present. However, unlike nudge games, there is one icon missing. Thus, a player must decide which icon to choose from a variety of icons in order to complete the winning pattern.

Each game has a total number of game outcomes ranging from 75,000 to 100,000. The owner of the game can configure each device to allow the payout percentage for the machine, ranging from a 92% payout to a 98% payout. At a 92% payout, players will lose 8% of the amount of money cumulatively put into the machine even if the player exercises perfect skill and knowledge. At a 98% payout, players will lose 2% of the amount of money cumulatively put into the machine even if the player exercises perfect skill and knowledge. Even with the highest payout rate, positive prizes are available in less than one-third of all game outcomes.

The game chooses the screens that appear to players and dictates whether they can win a prize from a pool of game outcomes. The game randomly selects the first game outcome from a table of predefined starting indices. The game chooses all game outcomes after the first screen from

a finite pool, and the player plays all games thereafter without repetition until the game reaches the last game outcome. At that time, the game returns to the first game outcome and continues sequentially thereafter, repeating in the same manner.

On all Superior Skill 1 and Superior Skill 2 games, a prize viewer allows players to view the possible prize for each theme-level combination available before players decide which theme and level to choose. The game awards prizes in the form of credits, with one credit equaling one cent. A player may put his or her credits toward another game play or cash out at any time. The machines do not dispense money. Prizes are in the form of either a redeemable voucher for a maximum of fifty dollars or tickets worth up to fifty dollars that are redeemable for merchandise on the premises where the machine is located.

## II. Prior Proceedings.

On March 3, 2016, Banilla filed a petition for declaratory order with the Department, seeking an order from the Department declaring its Superior Skill games are electrical and mechanical amusement devices that comply with Iowa Code section 99B.10(1) (2015)[1] and are therefore not illegal gambling devices under section 725.9. It amended its petition on April 15.

In its amended petition, Banilla claimed the registration requirements under section 99B.53 (2016)[2] did not apply to the machines because the outcome of the games is primarily determined by the skill or knowledge of the player. Thus, Banilla asked the Department to declare that the machines comply with Iowa Code section 99B.52 and are not illegal gambling devices under section 725.9. In support of its petition,

---

[1]Applicable provisions moved to Iowa Code sections 99B.52–.53 (2016).

[2]All references are to the 2016 Iowa Code unless otherwise noted.

Banilla submitted reports from Nick Farley & Associates, Inc., concluding that in each Superior Skill game the outcome is primarily determined by the skill or knowledge of the player.

On May 23, after Banilla had provided written responses to the Department's questions, the Department issued a notice to all registered amusement device manufacturers, manufacturers' representatives, distributors, and owners, advising them of the amended petition for declaratory order and inviting comments about the issues presented therein. The Department received no comments.

On July 8, the Department and Banilla met via video conference, during which Banilla demonstrated the games and the parties discussed the games. After the parties' meeting, the Department found the Superior Skill games are not illegal gambling devices; however, the Department found the outcomes of the games are not primarily determined by the skill or knowledge of the operator. In its ruling, the Department found "[c]hance plays an equal or greater role as the player's skill or knowledge in determining the outcome of the game." Therefore, to operate the games legally in Iowa, the Department found the owner of Superior Skill games must register the game pursuant to Iowa Code sections 99B.53 and 99B.56.

On November 29, Banilla filed a petition for judicial review with the district court. In its petition, it claimed the Department's finding that the outcome of the games is not primarily determined by the skill or knowledge of the operator was erroneous. Banilla alleged the Department's decision was based on a flawed interpretation of the language in section 99B.53(1). It also argued the Department based its decision upon an irrational, illogical, and wholly unjustifiable application of law to fact. Banilla further

claimed the decision was unreasonable, arbitrary, and an abuse of discretion.

The district court upheld the Department's interpretation of the statute, finding no errors of law. Further, the district court held the Department did not prejudice the substantial rights of the manufacturer and seller based upon an irrational, illogical, or wholly unjustifiable application of law to fact. Finally, the district court found the Department did not prejudice the substantial rights of the manufacturer and seller unreasonably, arbitrarily, capriciously, or through an abuse of discretion. Banilla appeals.

### III.  Standards of Review.

An individual adversely affected by a final agency action is entitled to judicial review. Iowa Code § 17A.19(1). Iowa Code section 17A.19(10) of the Iowa Administrative Procedure Act (IAPA) governs judicial review of administrative agency decisions. *NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 36 (Iowa 2012). The petitioner challenging agency action has the burden of proving the invalidity or prejudice asserted. Iowa Code § 17A.19(8)(*a*).

The Department is responsible for inspection and licensing of social and charitable gambling under chapter 99B. Iowa Code § 10A.104(10) (2018). The Department is also responsible for enforcement of chapter 99B. *Id.* § 10A.104(8) (2018). The Department is an "agency" as defined in the IAPA[3] and is thus subject to judicial review under the IAPA. *See* Iowa Code § 17A.19(10); *see also Wyatt v. Iowa Dep't of Human Servs.*, 744

---

[3]"Agency" is defined as "each board, commission, department, officer or other administrative office or unit of the state." Iowa Code § 17A.2. The definition does not include the general assembly, any component of the judicial branch, the office of consumer advocate, the governor, a political subdivision of the state, or its offices. *Id.*

N.W.2d 89, 93 (Iowa 2008); *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 508 (Iowa 2003).

When an aggrieved party appeals the district court's decision in a judicial review action, our job is to determine whether our application of the standards of review set forth in section 17A.19(10) produces the same result reached by the district court in its application of the standards. *Berger v. Dep't of Transp.*, 679 N.W.2d 636, 639 (Iowa 2004).

The standard of review we apply depends upon the error asserted by Banilla. *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012). We will discuss the appropriate standard of review under each issue.

**IV. Issues.**

There are three main disputes at issue in this case: (1) whether the Department erred in its interpretation of the language of Iowa Code section 99B.53(1); (2) whether the Department prejudiced the substantial rights of Banilla based upon an irrational, illogical, or wholly unjustifiable application of law to fact; and (3) whether the Department prejudiced the substantial rights of Banilla by acting unreasonably, arbitrarily, capriciously, or through an abuse of discretion.

**V. Whether the Department Erred in Its Interpretation of Iowa Code Section 99B.53(1).**

**A. Relevant Statutes.** Sections 99B.51 to 99B.60 of the Code govern the use of electrical or mechanical amusement devices within Iowa. The relevant section applicable to this appeal is section 99B.53. Iowa Code section 99B.53 provides an electrical or mechanical amusement device "that awards a prize where the outcome is not primarily determined by skill or knowledge of the operator" must be registered with the state. Iowa Code § 99B.53(1).

**B. Standard of Review.** We will defer to an agency's interpretation of statutory language when the legislature has clearly vested authority in the agency to interpret the statutory language at issue. *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 10–15 (Iowa 2010). Where the legislature clearly vests interpretive authority in the agency, "we [will] reverse the Department's decision only when its interpretation is 'irrational, illogical, or wholly unjustifiable.' " *Gartner v. Iowa Dep't of Pub. Health*, 830 N.W.2d 335, 343 (Iowa 2013) (quoting *NextEra*, 815 N.W.2d at 37).

If the legislature does not clearly vest the agency with interpretive authority, we will reverse an agency decision that relied on an erroneous interpretation of the law. *Id.* at 343. "Where there is no express grant of interpretive authority, we as a general matter do not grant deference to an agency when the legal terms being construed have independent legal meaning not within [the agency's] expertise." *Irving v. Emp't Appeal Bd.*, 883 N.W.2d 179, 185 (Iowa 2016).

To determine whether an agency has been given authority to interpret statutory language, "we carefully consider 'the specific language the agency has interpreted as well as the specific duties and authority given to the agency with respect to enforcing particular statutes.' " *Gartner*, 830 N.W.2d at 343 (quoting *NextEra*, 815 N.W.2d at 37). Iowa Code section 17A.19(10) sets forth the standards to assist us in determining the scope of the agency's interpretive authority. *See* Iowa Code § 17A.19(10).

The district court determined the Department's interpretation of the statute was not entitled to *Renda* deference. We agree because the legislature did not clearly vest interpretive authority in the Department,

nor is the language of section 99B.53(1) complex or beyond the competency of the courts. *Irving*, 883 N.W.2d at 185.

Under chapter 99B, the Department may adopt rules including those describing required books, records, and accounting; requirements for qualified organizations; methods of displaying costs and explanations of games and rules; and those defining unfair or dishonest games, acts, or practices. Iowa Code § 99B.2. In addition, the Department may determine any other requirements of mechanical gaming devices by rule. Iowa Code § 99B.52(7). However, the fact that the legislature granted an agency rulemaking authority does not give the agency "authority to interpret *all* statutory language." *Gartner*, 830 N.W.2d at 343 (quoting *Evercom Sys., Inc. v. Iowa Utils. Bd.*, 805 N.W.2d 758, 762 (Iowa 2011)). "[B]road articulations of an agency's authority, or lack of authority, should be avoided in the absence of an express grant of broad interpretive authority." *Id.* at 343 (alteration in original) (quoting *NextEra*, 815 N.W.2d at 37).

The language at issue here, stating that a device must be registered if it "awards a prize where the outcome is not primarily determined by skill or knowledge of the operator," Iowa Code § 99B.53(1), is not a rule the Department formulated in accordance with the statute. The language is part of the statute, and the legislature did not give the Department express authority to interpret the language. *See Renda*, 784 N.W.2d at 11 ("[I]n *Iowa Ass'n of School Boards v. Iowa Department of Education*, 739 N.W.2d 303 (Iowa 2007), we noted that the enabling statute provided the director of the department of education 'shall . . . [i]nterpret the school laws and rules relating to the school laws.' The explicit grant of authority made clear the General Assembly's intent to vest the discretion to interpret the laws with the department, and we concluded that the department's

interpretation was entitled to deference pursuant to section 17A.19(10)(*c*)." (quoting *Iowa Ass'n of Sch. Bds.*, 739 N.W.2d at 307)).

Without the legislature clearly vesting the Department with the authority to interpret section 99B.53(1), we look to see if the language is "alien to the legal lexicon." *Irving*, 883 N.W.2d at 185. The words "primarily," "outcome," and "knowledge" are not beyond the understanding of this court, nor are these terms specific to the expertise of the Department. These words appear elsewhere throughout the Iowa Code. *See, e.g.*, Iowa Code § 427B.1(*a*) (2018);[4] *id.* § 256I.13(2)(*b*);[5] *see also Simon Seeding & Sod, Inc. v. Dubuque Human Rights Comm'n*, 895 N.W.2d 446, 455–56 (Iowa 2017) (refusing to defer to the department's interpretation of the phrase "regularly employs" because there was no express grant of authority, the phrase is not specific to the agency's expertise, and the phrase is used in other Iowa statutes); *Irving*, 883 N.W.2d at 185 (holding the terms "employer," "voluntary," "misconduct," and "in connection with" were not terms beyond the competency of the courts and thus the department was not entitled deference to interpret them absent a clear indication by statute); *Gartner*, 830 N.W.2d at 344 (holding the terms "paternity," "father," and "husband" were not exclusively within the expertise of the department and thus deference to agency interpretation would be overreaching).

Because the legislature did not clearly delegate interpretative authority to the Department and the terms are clearly within the

---

[4] "*Distribution center*' means a building or structure used primarily for the storage of goods which are intended for subsequent shipment to retail outlets." Iowa Code § 427B.1(*a*) (2018).

[5] "A family support program may be used as an early intervention strategy to improve birth outcomes, parental knowledge, family economic success . . . ." Iowa Code § 256I.13(2)(*b*).

competency of this court, we will not defer to agency interpretation of the statutory language of section 99B.53(1). Therefore, we will review questions of statutory interpretation for correction of errors at law. *State v. Tarbox*, 739 N.W.2d 850, 852 (Iowa 2007).

**C. Analysis.** We must interpret the language of Iowa Code section 99B.53(1). The Code states,

> [A]n electrical or mechanical amusement device in operation or distributed in this state that awards a prize where the outcome is not primarily determined by skill or knowledge of the operator shall be registered by the department as provided in this section.

Iowa Code § 99B.53(1). The three words at issue that we must interpret are "primarily," "outcome," and "knowledge."

Our goal in interpreting a statute is to determine the legislative intent by looking at the language the legislature chose to use, not the language they might have used. *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 770 (Iowa 2016). In other words, legislative intent cannot change the meaning of a statute if the words used by the legislature will not allow such a meaning. *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995). The legislature has not defined any of these terms.

When there is no statutory definition to guide us, we interpret terms "in the context in which they appear and give each [word] its plain and common meaning." *Ramirez-Trujillo*, 878 N.W.2d at 770. If there is more than one interpretation of the plain meaning that is reasonable, we will employ traditional tools of statutory interpretation. *Irving*, 883 N.W.2d at 191.

1. *Primarily.* The Department interpreted the word "primarily" to require a dominant-factor doctrine for measuring chance against skill and knowledge. Banilla does not dispute this interpretation.

The Alaska Supreme Court has discussed the dominant-factor doctrine. *Morrow v. State*, 511 P.2d 127, 129 (Alaska 1973). It noted that in determining whether chance is present, courts have employed two doctrines, the pure chance doctrine or

> the dominant factor doctrine, under which a scheme constitutes a lottery where chance dominates the distribution of prizes, even though such a distribution is affected to some degree by the exercise of skill or judgment. Most jurisdictions favor the dominant factor doctrine.

*Id.* Under this doctrine, a court must determine whether skill, knowledge, or chance dominates the outcome. *See id.*

We agree with the parties that the dominant-factor doctrine is the proper meaning of "primarily" because the doctrine is consistent with both the plain meaning of the word and Iowa caselaw analyzing it.[6] In addition, this interpretation is "reasonable, best achieves the statute's purpose, and avoids absurd results." *Holstein Elec. v. Breyfogle*, 756 N.W.2d 812, 815 (Iowa 2008) (quoting *State v. Bower*, 725 N.W.2d 435, 442 (Iowa 2006)).

The dictionary equates "principally" with "primarily." *Primarily*, *Webster's Third New International Dictionary* (unabr. ed. 2002). Applying this definition to the statute would render the statute to read "where the outcome is not [principally] determined by skill or knowledge of the operator" the device must be registered. Iowa Code § 99B.53(1). This plain

---

[6]Other states have applied a similar test. *See, e.g.*, *Indoor Recreation Enters., Inc. v. Douglas*, 235 N.W.2d 398, 400 (Neb. 1975) ("The test of the character of the game is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game." (quoting *Baedaro v. Caldwell*, 56 N.W.2d 706, 709 (Neb. 1953))); *Las Vegas Hacienda, Inc. v. Gibson*, 359 P.2d 85, 87 (Nev. 1961) ("The test of the character of a game is not whether it contains an element of chance or an element of skill, but which is the dominating element."); *State v. Stroupe*, 76 S.E.2d 313, 316 (N.C. 1953) ("[A] game of chance is one in which the element of chance predominates over the element of skill . . . ." (quoting D.A. Norris, Annotation, *What Are Games of Chance, Games of Skill, and Mixed Games of Chance and Skill*, 135 A.L.R. 104, 113 (1941))).

meaning of the word is clear and unambiguous, especially considering the context of the statute, the purpose of which is to regulate gambling devices. *See State v. Spencer*, 737 N.W.2d 124, 129–30 (Iowa 2007) ("[W]ords in the statute are given their ordinary and common meaning by considering the context within which they are used." (quoting *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004))). *See generally* Iowa Code ch. 99B (the legislature included no statement of purpose, but the chapter "Social and Charitable Gambling" addresses regulations and enforcement of gambling).

The definition is also consistent with the interpretation of the word "primarily" in other Iowa decisions. *See, e.g.*, *Iowa Ag Constr. Co. v. Iowa State Bd. of Tax Review*, 723 N.W.2d 167, 176 (Iowa 2006) (discussing a rule which defines "primarily" as more than fifty percent of the time); *Remer v. Bd. of Med. Exam'rs*, 576 N.W.2d 598, 601 (Iowa 1998) (using the *Webster's* dictionary definition of "primarily," which was "fundamentally" or "principally").

Therefore, we agree with the Department's conclusion that "primarily" requires the fact finder to determine whether skill, knowledge, or chance dominates the outcome. If chance dominates the outcome, the device must be registered.

2. *Outcome.* Banilla argues the Department and district court erred in interpreting the word "outcome" to mean, "actually winning a prize." Banilla asks the court to adopt a more expansive definition of "outcome" and to find that in the context of the statute, the term means any number of results, including

> winning a prize, failing to win a prize, playing to win a predetermined prize, choosing to play a different game or to play the same game at a different increment, or some other

result, including for the amusement of game play itself without regard to prize.

Absent a statutory definition or an established meaning in the law, we give words in a statute their ordinary and common meaning by considering the context within which they are used. *Auen*, 679 N.W.2d at 590. We start with the dictionary definition of "outcome" to determine its plain meaning. The dictionary defines "outcome" as "something that comes out of or follows from an activity or process." *Outcome, Webster's Third New International Dictionary.* Banilla is correct that the plain meaning of the word does not require a prize. However, the plain meaning does not necessarily include "[t]he decision *not* to continue play, to play at a different level, or to select a different game or puzzle."

Thus, we must look to the context the legislature used in the statute. The object and purpose of chapter 99B is to regulate social and charitable gambling. *See* Iowa Code ch. 99B. Subchapter VI, under which section 99B.53 falls, specifically focuses on electrical or mechanical amusement devices. *Id.* § 99B.53. The preceding section, 99B.52, states,

> A person may own, possess, and offer for use at any location an electrical or mechanical amusement device, except for an amusement device required to be registered pursuant to section 99B.53. If the provisions of this section and other applicable provisions of this subchapter are complied with, the use of an electrical or mechanical amusement device shall not be deemed gambling. All electrical or mechanical amusement devices shall comply with this section.

*Id.* § 99B.52(1).

The subsequent provisions in this section discuss the prohibited features for electrical or mechanical amusement devices that are not deemed gambling devices. *See id.* § 99B.52(2)–(6). All of these provisions address restrictions on awards or prizes. *Id.* Thus, it is clear from the context of the statute that the purpose of these provisions is to differentiate

between devices that must be registered and those which need not be, based on the prize or award to be won.

This interpretation, unlike Banilla's, is reasonable. *See Spencer*, 737 N.W.2d at 130 ("In interpreting a statute this court looks for 'an interpretation that is reasonable, best achieves the statute's purpose, and avoids absurd results.' " (quoting *Bower*, 725 N.W.2d at 442)). Nowhere in chapter 99B, subchapter VI, does the Code reference playing to win a predetermined prize, choosing to play a different game or to play the same game at a different increment, or some other result, including for the amusement of game play itself without regard to a prize. On the other hand, it does reference winning a prize or failing to win a prize. *See, e.g.*, Iowa Code §§ 99B.52(2)–(6), .53(1). Banilla's interpretation does not make sense in the context of the statute and does not further its legislative purpose. *See id.* § 99B.53(1).

The Department's interpretation of "prize" as winning a prize or failing to win a prize also matches Banilla's own definition of "outcome" when describing Superior Skill games. Banilla states, "The Prize Viewer provides the player with knowledge of the attainable prize, and thus the possible outcomes." It also states, "On Each Superior Skill device, the touch screen display features visual meters indicating the player's credits; the previous outcome; and the 'Prize Viewer,' which indicates the future outcome."

Banilla's own expert described Superior Skill games as "[e]ach game theme contains a 'Prize Viewer' feature which allows the player to view the upcoming game *outcomes* by pressing the 'Prize Viewer' icon on the video screen at any given time prior to the initiation of a game." (Emphasis added.) Banilla can hardly argue that "outcome" in the context of the

statute encompasses definitions beyond prize or award when Banilla uses the term itself to describe the available prize.

Moreover, including the pleasure of game playing or the ability to walk away from a game in the definition of "outcome" under this statute would inhibit the purpose of the statute. Under this interpretation any slot machine—even one with a random number generator—would be permitted outside of licensed casinos, as long as it is registered with the Department, because the player knows he or she will have fun playing it.

For these reasons, we determine the Department correctly determined the meaning of "outcome" in section 99B.53(1) as to whether a person wins a prize or fails to win a prize.

3. *Knowledge.* Banilla argues players of Superior Skill games have "knowledge" because the prize viewer allows them to view the possible reward before deciding to play the game. The Department found that knowledge of the potential prize is not enough under the statute. Rather it found a player's knowledge must be "capable of controlling or directing the game's result, not just of informing the player's own decisions while playing (or their decision not to play)."

The dictionary defines "knowledge" as "the fact or condition of knowing." *Knowledge, Webster's Third New International Dictionary.* It is true that the prize viewer allows the player to see if a prize is available for the next game. Thus, the question becomes is knowledge of the possibility of winning the prize sufficient under the statute.

Here, the statute establishes that a player's "skill or knowledge" must influence the outcome of whether a player wins or loses more so than chance. Iowa Code § 99B.53(1). It would be absurd that the legislature intended that if a person has knowledge of what prize he or she may win before playing a game, the element of chance is eliminated from the game.

If this were the case, the purpose of the statute would be completely frustrated, as any slot machine device would technically fall under this definition of "knowledge." Patrons have access to slot machine rules and overall payout percentages before playing. *See* Iowa Admin. Code r. 491—11.9(4) (requiring casinos to post actual payouts from slot machine games each month). "Knowledge" must mean more under the statute.

We think the knowledge aspect of the statute refers to electrical or mechanical amusement devices that actually test a person's knowledge. A person's knowledge must assist the player in his or her game play. The most obvious of those devices are trivia games where a player answers a question based upon his or her knowledge of the subject.

Accordingly, we agree with the Department's interpretation of "knowledge" as meaning the type of knowledge that assists in a player's game play.

**VI. Whether the Department Prejudiced the Substantial Rights of Banilla Based Upon an Irrational, Illogical, or Wholly Unjustifiable Application of Law to Fact.**

**A. Standard of Review.** Banilla challenges the Department's conclusion that section 99B.53(1) applies to Superior Skill games and thus that the games are subject to registration and other regulation. The legislature vested the Department with the authority to "[a]dminister inspection and licensing of social and charitable gambling pursuant to chapter 99B." Iowa Code § 10A.104(10) (2018). It also gave the Department the authority to declare "the applicability to specified circumstances of a statute, rule, or order within the primary jurisdiction of the agency." *Id.* § 17A.9(1). Where the legislature vested the application of law to fact in an agency, such as here, we will only overturn the agency's

conclusion if the application is "irrational, illogical, or wholly unjustifiable." *Id.* § 17A.19(10)(*m*); *see Burton*, 813 N.W.2d at 256.

**B.  Analysis.**  Having agreed with the Department's interpretation of section 99B.53(1), we must determine whether the Department was "irrational, illogical, or wholly unjustifiable" in applying the law to the facts of this case.  Iowa Code § 17A.19(10)(*m*); *see Burton*, 813 N.W.2d at 256.

Banilla first argues the Superior Skill games' prize viewer allows the player to control the outcome by providing the player with knowledge of the attainable prize.  Under section 93B.53(1), knowledge of an attainable prize is not the type of knowledge the statute requires to avoid registration.  The prize viewer does not give a player any advantage in his or her play affecting the chances of winning a prize, other than to notify the player of the potential prize.  *See Commonwealth v. 9 Mills Mech. Slot Machs.*, 437 A.2d 67, 71 (Pa. 1981) ("[A]lthough some knowledge of the odds of obtaining various combinations of cards would enable a player to maximize his or her potential for winning, the outcome of the game is dependent entirely upon the electronic fall of the cards.").  Moreover, we have held machines that give knowledge of the next prize were in fact gambling devices under an earlier statutory scheme.  *See State v. Ellis*, 200 Iowa 1228, 1231, 206 N.W. 105, 106–07 (1925).  The knowledge contemplated by section 93B.53(1) must assist the player in his or her game play.

Banilla also argues skill plays more of a role than chance because players must complete a skill task—nudging or swapping—to play the game.  Yet, a player will always expend more total credits to play than he or she will redeem in prizes, despite how skillful or knowledgeable a player might be.  The reason for this is that the machine can be set on how much it will pay with the highest payout being a 98% payout.  Thus, with perfect

skill and knowledge, a player cannot win every time. *See Commonwealth v. Two Elec. Poker Game Machs.*, 465 A.2d 973, 978 (Pa. 1983) (finding an electronic gaming device a per se gambling device and that "[s]kill can improve the outcome in Electro-Sport; it cannot determine it"). Therefore, even if the player had the skill to make the correct move every spin, he or she would lose 2% of the time.

The Department determined that whether a player wins on the Superior Skill games relies primarily more on chance than on skill or knowledge. Based on the facts and our interpretation of section 99B.53(1), we find there is ample support in the record to support the Department's findings. Therefore, we do not find the Department's application of law to fact was irrational, illogical, or wholly unjustifiable.

**VII. Whether the Department Prejudiced the Substantial Rights of Banilla by Acting Unreasonably, Arbitrarily, Capriciously, or Through an Abuse of Discretion.**

**A. Standard of Review.** We may reverse, modify, or grant other appropriate relief from agency action if we determine that the substantial rights of the petitioner have been prejudiced because the agency action is unreasonable, arbitrary, capricious, or an abuse of discretion. Iowa Code § 17A.19(10)(*n*). A decision is arbitrary or capricious when "it is taken without regard to the law or facts of the case." *Dico, Inc. v. Iowa Emp't Appeal Bd.*, 576 N.W.2d 352, 355 (Iowa 1998) (quoting *Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 688–89 (Iowa 1994)). "Discretion is abused when it is exercised on grounds clearly untenable or to an extent clearly unreasonable." *Martin Marietta Materials, Inc. v. Dallas County*, 675 N.W.2d 544, 553 (Iowa 2004) (quoting *Berg v. Des Moines Gen. Hosp. Co.*, 456 N.W.2d 173, 177 (Iowa 1990)).

**B.    Analysis.**    The Department's interpretation of the law is consistent with ours.  Based on the evidence, the Department's application of the law to the facts is also reasonable.  Moreover, the Department inquired into the facts of this matter by requesting more information from Banilla after the initial petition, held a videoconference discussion with Banilla on the matter, and attempted to understand exactly how the devices work through a demonstration.  The process the Department used to reach its conclusion was fair and reasonable.  For these reasons, we cannot find the actions of the Department unreasonable, arbitrary, capricious, or an abuse of discretion.

**VIII.  Summary and Disposition.**

We find the Department properly interpreted the relevant statutes. We also find the Department did not prejudice the substantial rights of Banilla based upon an irrational, illogical, or wholly unjustifiable application of law to fact.  Finally, we find the Department did not prejudice the substantial rights of Banilla unreasonably, arbitrarily, capriciously, or through an abuse of discretion.  Therefore, we affirm the judgment of the district court.

**AFFIRMED.**