# IN THE COURT OF APPEALS OF IOWA

No. 22-0465
Filed February 22, 2023

**TRESTLE CORPORATION LIMITED,**
 Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF INSPECTIONS AND APPEALS,**
 Defendant-Appellee.
_____

 Appeal from the Iowa District Court for Polk County, Samantha Gronewald,

Judge.


 Trestle Corporation Limited (Trestle) seeks judicial review of a decision by

the Iowa Department of Inspections and Appeals requiring Trestle's game to be

registered under Iowa's gaming statute.  **AFFIRMED.**


 Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for

appellant.

 Brenna Bird, Attorney General, and David M. Ranscht and John R.

Lundquist, Assistant Attorneys General, for appellee.


 Heard by Bower, C.J., and Badding and Buller, JJ.

**BULLER, Judge.**

This case is about whether a particular computerized game is primarily a game of skill or knowledge, contrasted with a game of chance. The Director of the Iowa Department of Inspections and Appeals (the agency) determined a game developed by Trestle Corporation Limited (Trestle) was not primarily one of skill or knowledge, which means the relevant devices must be registered under Iowa's gaming statute. We affirm and hold that, while the game at issue relies on a mix of chance and skill, chance dominates such that registration is required.

## I.      Background Fact and Proceedings

In 2018, the supreme court decided *Banilla Games, Inc. v. Iowa Department of Inspections & Appeals*, 919 N.W.2d 6 (Iowa 2018), providing for regulation of certain "nudge" games.

> Nudge-style games consist of three electronic reels featuring different icons that spin when a player pushes the play button and stop automatically after a short time. The reels may also stop spinning if a player pushes the stop button. However, if a player pushes the stop button, the same icons will appear as if the player let the machine stop automatically. Players then determine whether a potential winning combination of two or more icons is present and choose one of the wheels to move up or down (i.e., nudge) in order to complete the winning pattern.[1]

*Banilla*, 919 N.W.2d at 10. In response to *Banilla*, Trestle developed the "Game of Skill Multi-Game System version 13.3.1.1," which we will refer to as "the game."

---

[1] Apparently in light of *Banilla*, 919 N.W.2d at 10, the General Assembly defined "nudge game" as "any game or phase of a game in which a participant spins reels or simulated reels and may choose to nudge one or more reels in any direction to complete a winning combination or pattern." 2021 Iowa Acts ch. 100, § 2 (codified at Iowa Code § 99B.1(25)). The General Assembly also excluded nudge games from the definition of "amusement concession." *Id.* §§ 1, 4 (codified at Iowa Code §§ 99B.1(1), .31). This legislation took effect after Trestle filed its petition for declaratory order, but the definition appears to be consistent with *Banilla*.

The game is played using a piece of standalone machinery with a touchscreen. Players insert cash into the front of the cabinet, and the cash generates "credits" in the amount of one credit per cent. The game rate ranges from 86% to 98%, meaning that only 86% to 98% of the overall credits spent to play can be recovered through winnings.

The game involves three phases and two different game themes—one theme is about ducks, the other about bugs. The first phase of both themes involves nudge-style games where, after play begins, players nudge symbols left or right to attempt to align a winning combination. The possible outcomes for this phase are: (1) a winnable combination with a prize greater than the cost to play; (2) a winnable combination with a prize less than the cost to play; or (3) no winnable combination. In other words, the outcome at this phase is pre-determined, regardless of what buttons a player may press.

If a player succeeds at the first phase, they move to the second phase, referred to by Trestle as "Skill It." This phase presents players with a speedometer-like display that requires the player to time a "stop" arrow that determines the prize, which ranges from 55% to 110% of the potential prize from the first phase. It is possible for players who successfully complete the first and second phases to receive a prize that is less than the credits expended to play.

The third phase, referred to by Trestle as "Follow Thru," is optional and only offered to players who do not progress past the first phase. This third phase,

comparable to the children's game "Simon,"[2] requires players to repeat a correct sequence in six rounds of play. If successful, players receive a prize in excess of the purchase price to play. If the player fails, they do not receive any prize.

The agency issued a declaratory order finding that Trestle's device was an electrical or mechanical amusement device subject to registration because the "outcome of [the] device is not primarily determined by the skill or knowledge of the player." The district court, on judicial review, affirmed by finding the outcome of the game was "dominated by chance." This appeal follows.

## II.      Standard of Review

Because the supreme court has held the agency's interpretation of Iowa Code section 99B.53(1) (2021) is not entitled to deference, our review is for correction of errors at law. *Banilla*, 919 N.W.2d at 14. Under chapter 17A, we may "reverse, modify, or grant other appropriate relief from agency action if we determine that the substantial rights of the petitioner have been prejudiced because the agency action is unreasonable, arbitrary, capricious, or an abuse of discretion." *Id.* at 18–19 (citing Iowa Code § 17A.19(10)(n)).

---

[2]      The electronic game "Simon," emblematic of the late 1970s, consisted of a round plastic disc with four, large different colored buttons. Players tried to memorize and then repeat increasingly long sequences of musical tones after they were emitted from the disc and displayed by the illumination of the different colored buttons. *Mattel, Inc. v. United States*, 346 F. Supp. 2d 1295, 1303 (Ct. Int'l Trade 2004).

### III.    Discussion[3]

An electrical or mechanical amusement device "that awards a prize where the outcome is not *primarily* determined by skill or knowledge of the operator" must be registered with the agency.  Iowa Code § 99B.53(1) (emphasis added).  The term "'primarily' requires the fact finder to determine whether skill, knowledge, or chance dominates the outcome.  If chance dominates the outcome, the device must be registered."  *Banilla*, 919 N.W.2d at 15.

We agree with the agency and the district court that chance dominates the first (nudge) phase of the device.  We put significant weight on the possibility that a player in this phase may not be able to align a winning combination.  This "nudge" game would, on its own, clearly be a game of chance rather than skill.  *See id.* at 10.  We also agree with the agency and district court that there is some level of skill involved in the second ("stop" arrow) phase.  While skill in timing the arrow impacts the percentage of prize won, the total possible winnings are governed by the chance-determined nudge phase.  Last, we agree with the district court that the third (memory) phase relies on skill and knowledge, though it is undisputed this phase can be skipped in favor of a return to chance.

To the extent the agency claims that a device is subject to registration whenever one of multiple game phases is based on chance (such as a nudge game), we find that interpretation is not compatible with the statute and *Banilla*.

---

[3] Trestle's reply brief includes a photograph from a commercial website, purporting to depict what the appellant calls a "quintessential amusement device."  This photograph is outside the record and we do not consider it.  *See* Iowa R. App. P. 6.801 (defining the record on appeal); *State v. Lilly*, 969 N.W.2d 794, 799 (Iowa 2022) (noting appellate consideration is limited to record on appeal).

However, based on the facts presented here, we find that the game at issue is not primarily one of skill or knowledge. While Trestle has perhaps innovated beyond the game reviewed in *Banilla* by adding features that involve at least some degree of skill or knowledge, we conclude chance dominates because the subsequent phases progress from the initial chance-driven phase. For example, based solely on the chance phase, a player can be locked into winning no prize or a prize less than what they expend to play the game. The second and third phases really are just modifications (either enhancements or reductions) of the prize won during the initial chance phase. Chance dominates the game, even if skill can magnify or diminish potential winnings.

Much of Trestle's argument challenging the agency action and judicial review below consists of fact-driven complaints that disagree with how the underlying fact-finder resolved conflicts in the evidence. We have considered all of these factual complaints and find they do not warrant reversal, either because the complaints are immaterial to our analysis or because they involve the type of disputed inference that we owe deference on appeal from judicial review of agency action. *See* Iowa Code § 17A.19(10)(m); *see also Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012) (on deference to agency fact-findings). We have also considered the naming conventions Trestle adopted for the second and third phases ("Skill It" and "Follow Thru" respectively). But, as our supreme court noted eighty years ago, "[C]ourts have, in general, looked behind the name and style of the device to ascertain its true character." *State v. Wiley*, 3 N.W.2d 620, 624 (Iowa 1942).

Last, we reject Trestle's argument that the amount of prize does not matter to the analysis. Taking Trestle's argument to its logical conclusion, if it cost one dollar to play the game, but the player could always win at least one cent through exercise of skill or knowledge, registration is not required. This would be an unreasonable application of the law, and we decline to affirmatively undermine the statute based on Trestle's lipstick-on-a-pig[4] approach to game design. *Cf. Gift Surplus, LLC v. State ex rel. Cooper*, 868 S.E.2d 20, 26 (N.C. 2022) (looking past a "'winner-every-time' modification to permit a nominal award of a few cents" and finding a game subject to regulation).

Finding no error in law, nor any unreasonable, arbitrary or capricious application of the law to the facts, we affirm.

**AFFIRMED.**

---

[4] *See generally* Ben Zimmer, *Who First Put Lipstick on a Pig?,* Slate Magazine, (Sept. 10, 2008), https://slate.com/news-and-politics/2008/09/where-does-the-expression-lipstick-on-a-pig-come-from.html.